[L. A. No. 23539. In Bank. May 24, 1955.]

BARBARA CROWE et al., Respondents, v. FRANK W. SACKS, Appellant.

Eugene S. Ives for Appellant.

Parker, Stanbury, Reese & McGee for Respondents.

SHENK, J.—Defendant appeals from a judgment entered upon a jury verdict in favor of plaintiffs Crowe and Lowe in the sums of $8,500 and $11,000 respectively, in a personal injury action arising out of an automobile collision.

The principal error urged on appeal is that the trial court committed prejudicial error (1) in telling the jury after its proposed verdict was brought in (but before it was recorded) that the amounts awarded were "grossly inadequate" and (2) in sending the jury back to redeliberate. Defendant asks that the original verdict (in the amounts of $2,500 and $3,000, respectively) be ordered entered in lieu of the verdict in the sums of $8,500 and $11,000, and that judgment be entered thereon.

On June 28, 1951, a 1951 Ford convertible automobile being driven southerly on Cairo Road by Mrs. Crowe collided with a 1947 Chevrolet Sedan automobile being driven easterly on Two Mile Road by defendant Sacks near Twenty-nine Palms, California. This is an open intersection in desert country, there was no other traffic, the morning was clear. The only obstructions to visibility were a house located on the northwest corner, set back some 150 feet from each road, and a curve and a dip deep enough to hide a car from sight on Two Mile Road about one-quarter mile west of the intersection. Mrs .Crowe, with her sister Mrs. Lowe as a passenger, was returning to her motel and intended to turn right at Two Mile Road. She looked to the left and to the right for approaching traffic at distances of 100 feet, 50 feet, and again as she entered the intersection. She saw no cars until, just as the rear end of her car cleared the north edge of the intersection, she saw the defendant's car bearing down on her from the west. His left front fender collided with her right front fender, causing her car to spin around and to catapult her and her sister to the ground. The evidence was conflicting as to defendant's speed and as to when he first observed the Ford. His car laid down 86 feet of skid marks before it came to a stop in the sand. The point of impact was about 7 feet south and 2½ feet west of the center line of the intersection.

Both plaintiffs were removed by ambulance to a hospital in Twenty-nine Palms operated by Dr. Ince. He testified that Mrs. Lowe was found to be suffering from a concussion of the brain, shock, two fractures of the pelvis, torn ligaments in the pelvic area, a deep 2-inch scalp laceration, and with contusions and abrasions of the left hip, shoulder, face and entire body. Mrs. Crowe was also found to be suffering from concussion, abrasions and shock and was in considerable pain, localized in her neck. After six days the plaintiffs were released from the hospital and they returned to Glendale, where they were employed at the Behrens Memorial Hospital.

Mrs. Lowe, a woman in her early fifties, was employed as a bookkeeper at the hospital. She continued her duties at home from her bed or a wheelchair until October 1, 1951, after which she went to the hospital at least part time each day in connection with her employment. She received her full salary, $257 a month. In June 1952 it was discovered that she had a broken back with nerve involvement and that this could have been sustained as a result of the accident on June 28th. There was expert medical evidence that she would suffer with back pain for the rest of her life and that preexisting heart and menopause conditions may have been severely aggravated by the accident. She testified that she had frequent headaches and backaches as a result of the accident and was unable to work full time.

Mrs. Crowe, a woman in her thirties, was employed as a receptionist and telephone operator at the hospital at a salary of $215 per month for a 40-hour week. Her salary was "docked" for time not worked by her. She returned to work at the hospital on July 10th but the following morning had difficulty getting out of bed and could not move her head at all. She was hospitalized for the next few days, during which time she was taken to surgery and her neck was manipulated under anaesthetic. Thereafter her neck was placed in traction with heavy weights and a pulley attached. For the next month she had to wear a "Nelson collar" during the day to keep her head immobile and thus relieve the pressure on her neck. For five months she had to sleep at night with traction on her neck. Dr. Johnstone testified that she had a luxation of the cervical spine, that is, an injury to the neck which manifested itself as a severe pain in the neck and in the arm; that there was a marked change in her ability to do her work and in her disposition after the accident, that from the fact that she was not completely well after two years there was a serious question whether she would ever completely recover from it, and that she could not get along further without having many severe pains and was advised by the doctors to quit work.

The court instructed the jury as to all of the issues, as to the negligence of each party, proximate cause as to each party, contributory negligence as to each plaintiff, and as to the measure of damages. The jury was instructed that if it found for the plaintiffs or either of them it should award the party so entitled such amount as would compensate her reasonably for all detriment suffered by her of which it found defendant's

negligence to be a proximate cause; that in arriving at the amount of the award the jury should determine each of the items of medical treatment given or reasonably certain to be required and given in the future, and the reasonable value of X-rays, nursing care, hospital and ambulance service. The instruction on special damages properly advised the jury that it should consider not only those elements of damage but "also such sums as will compensate her reasonably for any pain, discomfort and anxiety" resulting from the injury, suffered or reasonably certain to be suffered in the future, as well as "such sum . . . as will compensate [her] reasonably for any loss of earning power" and the effect of her injuries upon her future earning power and the present value of the loss so suffered.

After three hours of deliberation the jury returned to the courtroom. The following proceedings upon which error is predicated, then took place:

"THE COURT: Have you reached a verdict?

"THE FOREMAN: We have."

The verdict was handed by the foreman to the bailiff, and by the latter to the judge.

"THE COURT: In noting this verdict, ladies and gentlemen, it appears you have determined the issue of liability in favor of the plaintiffs but I do not feel that you have adhered to the law or done your duty in so far as the amount of the verdicts are concerned in this case. I remind you that the special damages approximate the amounts which you have noted on this verdict. That means, of course, you have found there was little or no damage for pain or suffering or further loss of wages, if any. Do you desire to reconsider the verdict, if you do, the Court will return you for further consideration. How many jurors would like to reconsider this verdict?

"A JUROR: I would, sir."

A show of hands indicated a majority of the jurors would like to reconsider the verdict.

"A JUROR: What was the objection?

"THE COURT: . . . The verdict finds in favor of the plaintiffs and each of them . . . but the amounts reported . . . are only an approximation of the special damages sustained by [them]. That means, in my opinion, you are obviously compromising the issue of negligence; having found in favor of the plaintiffs on the issue of liability certainly your verdict should be commensurate with the actual damages which you

have found to be suffered by the plaintiff and each of them. I think this verdict is grossly inadequate.

"A Juror: This is a compromise verdict.

"The Court: If it is a compromised item then I will return you for further deliberation."

After the jury was returned to the juryroom the attorney for defendant cited the court's remarks as being coercion of jury, and error; that the verdict was admitted to be a compromise; and that the jury might construe the court's remarks as meaning it should reconsider the matter only on the issue of damages. The court then had the jury returned to the courtroom and instructed them to reconsider all of the issues involved, both negligence and damages, and that their determination upon either of those issues should not be based upon a compromise.

About four hours later the jury returned. The foreman replied that they had agreed upon their verdict. The clerk then read the verdict, which found in favor of plaintiff Crowe in the sum of $8,500, and in favor of plaintiff Lowe in the sum of $11,000. Upon a poll of the jury three-fourths of them replied that it was their verdict (9-3) and the verdict was then recorded. Defendant's attorney moved that the court put the amounts of the original verdict into the minutes. The court took the motion under submission, but announced orally that the amounts contained in the first proposed verdict were $2,500 and $3,000 in favor of plaintiffs. Defendant's attorney then cited the court as being in error in resubmitting the case to the jury. The following day by minute order the motion to put the amounts of the origina¹ verdict into the minutes, was denied. Motion for new trial was denied. Affidavits of jurors Woolverton and Pergrim were filed in support of motion for new trial. Neither affidavit showed that the verdict was arrived at by lot or by chance or was a quotient verdict.

Defendant argues that it was prejudicial error for the court to have returned the jury to the juryroom for deliberation. Sections 618 and 619 of the Code of Civil Procedure provide the limitations upon the jurisdiction of the trial court after the matter has been submitted to the jury. Section 618 provides that when at least three-fourths of the jury have agreed upon a verdict they must be conducted into court "and the verdict rendered by their foreman." The verdict must be read to the jury by the clerk or by the court and the inquiry made whether it is their verdict. Either

party may require the jury to be polled. "If upon such inquiry or polling more than one-fourth of the jurors disagree thereto, the jury must be sent out again, but if no such disagreement be expressed, the verdict is complete and the jury discharged from the case."

Defendant argues that the first proposed verdict was "rendered" within the meaning of this section when it was handed by the foreman to the bailiff, and by the bailiff to the judge; that the foreman had replied, in response to the court's inquiry, that it was the verdict of the jury; and that there was no expression of any disagreement with the verdict by any juror at such time, and therefore, that the verdict was complete and the jury should have been discharged and judgmen entered upon the verdict.

 Section 618 must be construed with section 619. (*Sparks* v. *Bernsten*, 19 Cal.2d 308, 313 [121 P.2d 497].) This provides "When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out." The proper inquiry is, was this verdict "informal" or "insufficient" within the meaning of this section?

"Informal" is defined as "defective in form; not in the usual form or manner; contrary to custom or prescribed rule." "Insufficient" is defined as "inadequate for some need, purpose or use." A verdict must comprehend all the issues submitted to the jury. A verdict which goes beyond the issues of the case as stated in the instructions on the law given by the court to the jury, is not in conformity with the instructions and is therefore "insufficient." Instances of this are: where the jury returned a verdict for $14,200 although it had been instructed by the court that the statutory maximum liability was $4,140 (*Redo Y Cia* v. *First Nat. Bank*, 200 Cal. 161 [252 P. 587]); where the verdict included improper items (*Prager* v. *Israel*, 15 Cal.2d 89, 98 [98 P.2d 729]; *Toon* v. *Pickwick Stages*, 95 Cal.App. 370, 374 [272 P. 797]; *Conlin* v. *Emanuel Lewis Inv. Co.*, 26 Cal.App. 388 [147 P. 472]); where the verdict is larger than warranted by the evidence (*Megee* v. *Fasulis*, 65 Cal. App.2d 94, 102 [150 P.2d 281]; *Logan* v. *Lewis*, 35 Cal. App. 663, 666 [170 P. 851]). Defects in form of the verdict may render it "informal" or "insufficient" (*Brown* v. *Regan*, 10 Cal.2d 519, 523 [75 P.2d 1063]; *Kerrison* v. *Unger*, 135 Cal.App. 607, 611 [27 P.2d 927].) If the

verdict is defective in form and it is a mere matter of computation of liquidated damages, the court may in a proper case advise the jury as to the correct amount or insert such amount in the verdict (*Engelberg* v. *Sebastiani,* 207 Cal. 727 [279 P. 795], when the plaintiff was entitled to interest as a matter of law, the court added interest to amount of verdict.)

The jury in the present case was informed that if it found in favor of the plaintiffs or either of them its award should include compensation for pain, discomfort or anxiety or loss of earnings, present or prospective, as found by the jury, in addition to the items of special damages. The bills in evidence as to Mrs. Crowe exceeded $900; as to Mrs. Lowe they exceeded the sum of $1,800. ■ The issues as to loss of earnings or earning power and as to pain and suffering were disputed, and the amount to be awarded as compensation therefor was within the province of the jury to determine. These amounts were unliquidated. ■ It cannot be presumed on appeal that any element of damage is ignored by the jury merely because the verdict is not for a large sum of money. (*Stein* v. *United Railroads,* 159 Cal. 368, 375 [113 P. 663].) The first proposed verdict exceeded the amount of the special damages proved and exceeded the amounts stated by plaintiffs' counsel in his opening statement ($3,000 for Mrs. Crowe, in excess of $2,500 for Mrs. Lowe). It does not appear, therefore, that the jury failed to consider the issues as to compensation to be awarded for loss of wages, or pain and suffering, merely because it awarded smaller sums than might seem proper to the trial court or to a reviewing court. ■ The verdict was not defective in form and if it comprehended all the items of damage contained in the instructions given by the court, regardless of amount, it was not insufficient. ■ If dissatisfied with the amount of the verdict the court could have granted a motion for new trial to the plaintiffs.

The defendant made timely objection to this error. (See *Brown* v. *Regan,* 10 Cal.2d 519, 524 [75 P.2d 1063]; *Van Damme* v. *McGilvray Stone Co.* 22 Cal.App. 191, 194 [133 P. 995], holding that defects in form of the verdict may be waived by failure to make timely objection.

On appeal the question is presented whether from an examination of the entire record this error of procedure caused a miscarriage of justice. (Const., art. VI, § 4½; *Pray* v. *Trower Lbr. Co.,* 101 Cal.App. 482, 491 [281 P. 1036].)

█ Where the jury fails to compensate plaintiffs for the special damages indicated by the evidence and, despite the fact that the injuries are shown to be painful, makes no award or allows only a trifling sum for general damages, the only reasonable conclusion is that the jurors compromised the issue of liability. (*Rose* v. *Melody Lane*, 39 Cal.2d 481, 489 [247 P.2d 335].) In the colloquy between the court and the jury, this fact was admitted by a juror, that this was a compromise verdict. The court had jurisdiction to send the jury back for further deliberation and to instruct the jury that its determination upon the issues should not be based upon a compromise, either as to liability or damages. This the trial court did, and if that were all that it did, prejudicial error would not have necessarily followed.

█ But an additional factor is here present, namely, the statement made by the trial judge that "I think this verdict is grossly inadequate." This language may be said to have counterbalanced the instructions of the court that the jury was to reconsider all issues and to have, in effect, instructed it that if upon redeliberation it again found for the plaintiffs it must bring in a larger verdict as a matter of law. It was a clear invasion of the province of the jury to determine the amounts of damages to be awarded. The higher verdict reached upon redeliberation, $8,500 as compared to $2,500, and $11,000 as compared to $3,000, is a clear indication that the jury was thus influenced in reaching its final verdict. It was an unwarranted interference with the prerogative of the jury to determine the amounts.

The argument is advanced by plaintiffs that the trial judge retains a salutary supervisory power over the verdict until the jury is discharged and that all the court was here doing was requiring the jury to return a verdict in accordance with the instructions given by the court.

█ The action of the judge in the correction of verdicts should be taken with caution. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within its province. (53 Am.Jur. p. 764; *Grant* v. *State*, 33 Fla. 291 [14 So. 757, 23 L.R.A. 723]; *McCurdy* v. *Hughes*, 63 N.D. 435 [248 N.W. 512, 87 A.L.R. 683].) █ If the jury allows damages so grossly inadequate as to show that it must have disregarded the evidence and the instructions of the court, it should be returned for further deliberation under proper instructions. (*Ansonia*

*Foundry Co.* v. *Bethlehem Steel Co.,* 98 Conn. 501 [120 A. 307].)

■ If the trial judge believes that the damages are inadequate, the proper procedure is to set the verdict aside on motion for new trial. (*Dorsey* v. *Barba,* 38 Cal.2d 350 [240 P.2d 604].) ■ A verdict may be set aside on motion for a new trial for insufficient evidence where plaintiff, if entitled to recover at all, is clearly entitled to a larger amount than allowed by the jury because in such case the evidence is insufficient to support the verdict.

■ The first verdict was not received or entered as the verdict of the jury. It was an unrecorded verdict and as such not sufficient upon which to enter a judgment. The second verdict must also be deemed insufficient to support a judgment because of the prejudicial effect of the proceedings in the trial court.

The judgment is reversed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.