[L. A. No. 29342. In Bank. June 2, 1967.]

MICHAEL F. JEHL, Plaintiff and Respondent, v. SOUTHERN PACIFIC COMPANY, Defendant and Appellant.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

824

Randolph Karr, William E. Still, E. D. Yeomans and Norman T. Ollestad for Defendant and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Respondent.

TRAYNOR, C. J.—In this action to recover damages for personal injuries under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) and the Safety Appliance Act (45

U.S.C. § 1 et seq.) defendant Southern Pacific Company appeals from an order granting plaintiff a new trial limited to the issue of damages. The facts relating to plaintiff's injury may be briefly stated, for defendant does not challenge its liability.

On June 19, 1962, at approximately 3:25 a.m., plaintiff was working in defendant's railroad yard at South Gate, California. He was then 19 years old and had been working for defendant for about 6 weeks. His job that night was to work as a field man. As railroad cars were switched onto the track he was working, plaintiff secured them by placing wooden blocks under the wheels. The blocking was necessary because the track was on a grade. Two cars failed to couple properly with cars already secured and began to roll back. The foreman told plaintiff to climb on the moving cars and secure them by means of the handbrake on each car. As plaintiff was doing so two other cars that had been sent up the track collided with the cars coming down the track. The impact threw plaintiff from the car he was riding and he fell under the wheels of one of the moving cars, receiving severe injuries to the lower part of both legs. It was necessary to amputate his right leg below the knee. The left leg remains in jeopardy of amputation because osteomyelitis has developed in it.

The jury returned a verdict for $100,000, and plaintiff successfully moved for a new trial on the issue of damages on the ground that the evidence was insufficient to sustain the verdict in that the damages awarded were inadequate. (See Code Civ. Proc., § 657; *Harper* v. *Superior Air Parts, Inc.*, 124 Cal.App.2d 91, 92 [268 P.2d 115].) Defendant contends that the trial court erred in concluding that the damages were inadequate and therefore abused its discretion in granting plaintiff's motion. ■ An appellate court cannot find an abuse of discretion in granting a new trial for insufficiency of the evidence unless it appears from the record that the verdict was adequate as a matter of law. (See *Yarrow* v. *State of California*, 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687]; *Bradford* v. *Edmands*, 215 Cal.App.2d 159, 166-167 [30 Cal.Rptr. 185].) No such adequacy appears here.

■ Plaintiff's right leg was amputated below the knee; his left leg was so seriously injured that it may also have to be amputated. There is permanent, chronic osteomyelitis in the left leg that has required repeated surgical treatment and may require recurrent treatment well into the future, and there is permanent limitation of motion in the left ankle.

Plaintiff continues to suffer pains in his right leg. He was hospitalized for 16 months following the accident and underwent 18 operations. Throughout this time he suffered great pain, necessitating extensive administration of pain-killing drugs. Had he not been injured, plaintiff's projected gross income from the date of the accident to the age of 65 would have exceeded $500,000. By substantially impairing his ability to compete in the labor market, his injuries materially reduced this expectable earning power. The projected costs of his prosthetic appliances exceeded $15,000. █ It thus appears that the trial court could reasonably have concluded that plaintiff's pecuniary losses alone would exceed the amount of the verdict and that a substantial additional amount should be allowed for pain and suffering. █ Accordingly, the trial court did not abuse its discretion in granting a new trial on the ground of inadequate damages.

█ Defendant contends, however, that because certain evidence favorable to it is so compelling, we should not apply the normal rule governing appellate review (see *Bradford* v. *Edmands, supra,* 215 Cal.App.2d at pp. 166-167), but should make an independent determination of the adequacy of the jury's verdict without regard to the ruling of the trial court. The evidence in question consists of certain motion picture films taken of defendant without his knowledge; uncontradicted testimony that he has made no effort at rehabilitation, has not exercised, has not sought job counseling, and spends his days generally watching television; and testimony that his prosthesis is not of the most advanced design and unnecessarily restricts his mobility. Defendant contends that this evidence establishes that there should be a substantial improvement in plaintiff's physical, mental, and emotional condition that will reduce his anticipated damages. At most this evidence would indicate that plaintiff may have exaggerated his damages. It does not demonstrate that the trial court erred in concluding that the verdict was inadequate.

█ Invoking *Crowe* v. *Sacks,* 44 Cal.2d 590 [283 P.2d 689], defendant contends that the trial court erred in not returning the jury for further deliberation under proper instructions, when it appeared that the damages were inadequate. There is no merit in this contention. Only if "the jury allows damages so grossly inadequate as to show that it must have disregarded the evidence and the instructions of the court," or the verdict is otherwise defective, should the jury "be returned for further deliberation under proper instruc-

tions." (*Crowe* v. *Sacks, supra,* 44 Cal.2d at p. 598.) If, on the other hand, "the trial judge believes that the damages are inadequate [but the verdict is not defective], the proper procedure is to set the verdict aside on motion for new trial." (*Crowe* v. *Sacks, supra,* 44 Cal.2d at p. 599.)

■ [See fn. 1] Defendant contends that the trial court should have given defendant the option to consent to an additur[1] before granting plaintiff's motion for a new trial. We consider this contention even though defendant did not directly request an additur in the trial court, for such a request would have been an idle act. (Civ. Code, § 3532; cf. *Hudspeth* v. *Jaurequi,* 234 Cal.App.2d 526, 528 [44 Cal.Rptr. 428].) In a discussion with counsel at the time for motions after trial, the court made it clear that it would not order an additur. Indeed, in light of this court's decision in *Dorsey* v. *Barba,* 38 Cal.2d 350 [240 P.2d 604], holding additur to be unconstitutional, the trial court would have been bound to deny an additur even if it had been specifically and directly requested. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Two questions must be resolved in considering defendant's contention. First, should the decision in *Dorsey* v. *Barba, supra,* 38 Cal.2d 350, be overruled? Second, if so, can additur be applied in the present case, which arises under the Federal Employers' Liability Act, 45 U.S.C. section 51 et seq.?

## I.

In *Dorsey* this court held that additur would deny a plaintiff's right to jury trial as guaranteed by article I, section 7, of the California Constitution.[2] Although the Seventh Amendment to the United States Constitution is not binding on the states[3] and differs significantly in language from the California constitutional provision,[4] *Dorsey* relied in large part

---

[1] "Additur" is used here to describe an order by which a plaintiff's motion for a new trial on the ground of inadequate damages is granted unless the defendant consents to a specified increase of the award within a prescribed time.

[2] Article I, section 7, provides: "The right of trial by jury shall be secured to all, and remain inviolate; . . ."

[3] See, e.g., *Pearson* v. *Yewdall,* 95 U.S. 294, 296 [24 L.Ed. 436, 437]; *Walker* v. *Sauvinet,* 92 U.S. 90, 92 [23 L.Ed. 678, 679].

[4] The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." (Compare fn. 2, *supra.*)

on *Dimick* v. *Schiedt,* 293 U.S. 474 [79 L.Ed. 603, 55 S.Ct. 296, 95 A.L.R. 1150]. (See *Dorsey* v. *Barba, supra,* 38 Cal.2d at p. 357.) *Dimick* was a five-to-four decision[5] and has been vigorously criticized.[6] Like *Dorsey, Dimick* was based on an historical and logical analysis that was open to serious question. Since additur did not exist at common law when the relevant constitutional provisions were adopted and since a plaintiff is guaranteed the right of jury trial as it existed at common law, additur was deemed a denial of that right. (*Dimick* v. *Schiedt, supra,* 293 U.S. at pp. 476-482 [79 L.Ed. at pp .605-609] ; *Dorsey* v. *Barba, supra,* 38 Cal.2d at pp. 355-359.)

Both courts were confronted with the argument that additur is no more a denial of a plaintiff's right to jury trial than remittitur is a denial of a defendant's right. Although some faint historical foundation was found for this difference in treatment,[7] *Dimick* further relied on the tenuous ground that remittitur left standing a part of the jury's award, whereas additur constituted ''a bald addition'' to the verdict.[8]

 We have reassessed *Dorsey* and overrule it, finding its arguments unpersuasive when considered in the light of the demands of fair and efficient administration of justice. We do not believe that defendants should be denied the advantages of additur when they are required to submit to remittitur.

 Even in *Dorsey* this court noted that the ''constitutional guarantee does not require adherence to the letter of

---

[5]Justice Stone wrote a dissenting opinion in which Chief Justice Hughes and Justices Brandeis and Cardozo concurred.

[6]See, e.g., Carlin, *Remittiturs and Additurs,* 49 W.Va.L.Q. 1, 18; James, *Remedies for Excessiveness or Inadequacy of Verdicts: New Trial on Some or All Issues, Remittitur and Additur,* 1 Duquesne U.L. Rev. 143, 154; Comment, 10 Wash. & Lee L.Rev. 46; 23 Cal.L.Rev. 536, 537; 14 So.Cal.L.Rev. 490; see also the comment in 44 Yale L.J. 318, 323-324, on *Schiedt* v. *Dimick* (1st Cir. 1934) 70 F.2d 558.

[7]*Dimick* v. *Schiedt, supra,* 293 U.S. at p. 484. 79 L.Ed. at p. 610.

[8]*Dimick* v. *Schiedt, supra,* 293 U.S. at p. 486, 79 L.Ed. at p. 611. There are several replies to this argument. In reaching the larger verdict involved in remittitur, the jury has rejected all smaller amounts just as they have rejected all larger amounts in reaching the smaller verdict involved in additur. Neither verdict is more that of the jury than the other. (See Carlin, *Remittiturs and Additurs, supra,* 49 W.Va.L.Q. 1, 18, 24-25; see also 44 Yale L.J. 318, 323.) Only additur retains all that was contained in the jury's verdict, and in both additur and remittitur something is taken from the litigant who is relying on the verdict. (See Bender, *Additur—The Power of the Trial Court to Deny a New Trial on the Condition that Damages be Increased,* California Law Revision Commission, Recommendation and Study relating to Additur (Oct. 1966) at pp. 617, 647-648.)

common law practice, and new procedures better suited to the efficient administration of justice may be substituted if there is no impairment of the substantial features of a jury trial.'' (*Dorsey* v. *Barba, supra,* 38 Cal.2d at p. 356.) We have concluded that additur is such a procedure. The demands of an ''efficient administration of justice'' must be considered in context. Since 1952, the year *Dorsey* was decided, there has been a tremendous increase in filings in civil cases including contested matters. Total dispositions in ordinary civil litigation increased more than fourfold during the 1952-1964 period. (Compare Judicial Council of California, Fourteenth Biennial Report, Appendix A, pp. 102-104, with *id.,* Twentieth Biennial Report, Tables 11-20, pp. 143-153.)[9] Of course, such practical considerations would be immaterial if additur impaired the right to a jury trial. We do not believe it does.

In assessing the precedents, we search for the meaning and substance of jury trial and are not rigidly bound by the exacting rules that happen to be found on ''the legal scrap heap of a century and a half ago.'' (*Dimick* v. *Schiedt, supra,* 293 U.S. at p. 495 [79 L.Ed. at p. 616] [Stone, J., dissenting] ; see *People* v. *Hickman,* 204 Cal. 470, 476 [268 P. 909, 270 P. 1117].) ■ The guarantee of jury trial in the California Constitution operates at the time of trial to require submission of certain issues to the jury. Once a verdict has been returned, however, the effect of the constitutional provision is to prohibit improper interference with the jury's decision. At the time of the American Revolution, the English courts seldom interfered with the amount of the jury's verdict in actions involving torts against the person. (See Mayne on Damages (11th ed. 1946) pp. 632-636; McCormick on Damages, pp. 26-27; Washington, *Damages in Contract at Common Law,* 47 L.Q.Rev. 345, 364.) The reason for their refusal to grant new trials in such cases was their view that determination of the amount of damages was within the exclusive province of the jury. (See, e.g., *Beardmore* v. *Carrington* (C.P. 1764) 2 Wils. 244, 249, 95 Eng. Rep. 790, 793.)

By the end of the 18th century, however, the Court of King's Bench accepted the doctrine that new trials would be granted in cases of torts against the person under appropriate

---

[9]The social and economic costs of crowded dockets increase every year. Additur's practical advantage in reducing these costs prompted the California Law Revision Commission to recommend legislation permitting some forms of additur thought not to be inconsistent with *Dorsey* v. *Barba.* (See California Law Revision Commission Study, *supra,* fn. 8, at pp. 607-614.)

circumstances (*Jones* v. *Sparrow* (K.B. 1793) 5 T.R. 257, 101 Eng. Rep. 144), but until the middle of the 19th century the English courts refused to grant new trials on the ground of inadequate damages (see *Phillips* v. *London & S.W. Ry.* (1879) 5 Q.B.D. 78). The unwillingness to interfere with the jury's decision, exemplified by the English courts, was a controlling consideration in the first California case to discuss the constitutional function of the jury with respect to the assessment of damages, *Payne* v. *Pacific Mail S.S. Co.*, 1 Cal. 33, where this court reversed an order granting a new trial unless plaintiff remit some of the jury's award. The plaintiff refused and appealed from the order granting a new trial. The court held that this interference with the right of trial by jury would result in "great abuse, if not the destruction of this right. . . ." (*Payne* v. *Pacific Mail S.S. Co., supra,* 1 Cal. at p. 37.) Although *Payne* was approved the following year in *George* v. *Law,* 1 Cal. 363, 365, the court held that the plaintiff's consent authorized remittitur and that defendants could not complain, because "the judgment stands for but one-half the amount, for which the verdict of the jury was rendered." (*George* v. *Law, supra,* 1 Cal. at p. 365.) These early English and California cases illustrate that the right to jury trial was regarded as a protection to parties relying upon a verdict. The modern practice of granting new trials because of excessive or inadequate damages constitutes a limitation on the former broad powers of the jury.

 It is true that the practical effect of additur is to give the plaintiff an award based upon a finding made ultimately by the trial court. Courts often determine fact issues, however, and the acceptance of this practice over many years refutes the argument that the framers of the Constitution regarded the jury as the only competent finder of facts. Decisions by the court admitting or excluding evidence at trial involve factual determinations as do those pertaining to the court's jurisdiction, the sufficiency of pleadings, and the interpretation of documents. Other instances of judicial or quasijudicial fact-finding are found in equity, admiralty, probate, divorce, bankruptcy, and administrative proceedings.

At the time of the American Revolution, there was no clear standard or practice governing the relationship between judge and jury. (See Henderson, *The Background of the Seventh Amendment,* 80 Harv.L.Rev. 289, 335-336.) If any reliable conclusion can be drawn from the practice of that time, it is that plaintiff would not have had the right to a reassessment

of damages by a second jury; the first jury's determination of the amount of damages was conclusive. Reexamination of the damages issue following an inadequate verdict is a modern development. Had the English judges in the late 18th century been willing to give a plaintiff's motion for new trial any consideration at all, as judges do time and again today, there is good reason to believe that they would have used additur.[10]

Remittitur happened to develop earlier than additur because courts undertook to grant new trials for excessive damages long before they took similar action on the ground of inadequacy. (See McCormick on Damages, pp. 72-73; Washington, *Damages in Contract at Common Law,* 47 L.Q. Rev. 345, 365, fn. 7.) The issue of additur was not presented until modern times, but it is a logical step in the growth of the law relating to unliquidated damages as remittitur was at an earlier date. Its acceptance, though still somewhat retarded, is growing.[11] It should not be treated differently from other modern devices aimed at making the relationship between judge and jury as to damages[12] as well as to other matters,[13]

---

[10]A practice similar to additur was employed for some time prior to 1791 in actions for mayhem. (See Carlin, *Remittiturs and Additurs, supra,* 49 W.Va.L.Q. 1, 27; see also 44 Yale L.J. 318, 323.)

[11]See, e.g., *Smith* v. *Ellyson,* 137 Iowa, 391, 395-396 [115 N.W. 40]; *Genzel* v. *Halvorson,* 248 Minn. 527, 529-534 [80 N.W.2d 854]; *Volker* v. *First Natl. Bank,* 26 Neb. 602, 606 [42 N.W. 731]; *Fisch* v. *Manger,* 24 N.J. 66, 71-80 [130 A.2d 815]; *Caudle* v. *Swanson,* 248 N.C. 249, 256-261 [103 S.E.2d 357]; *Bodon* v. *Suhrmann,* 8 Utah 2d 42, 45-46 [327 P.2d 826]; *Cordes* v. *Hoffman,* 19 Wis.2d 236, 241 [120 N.W.2d 137]. Cf. *Powers* v. *Allstate Ins. Co.,* 10 Wis.2d 78, 87-92 [102 N.W.2d 393]. Until *Powers* and *Cordes,* the Wisconsin practice concerning additur required the trial court to grant a new trial for inadequate damages unless the defendant consented to the highest amount a jury could reasonably award. (*Campbell* v. *Sutliff,* 193 Wis. 370 [214 N.W. 374, 53 A.L.R. 771]; compare *O'Connor* v. *Papertsian,* 309 N.Y. 465, 472-473 [131 N.E.2d 883, 56 A.L.R.2d 206].) Now the trial court is empowered to grant a reasonable amount. The Wisconsin Supreme Court has concluded that this practice does not violate the right to jury trial. (See also *Markota* v. *East Ohio Gas Co.,* 154 Ohio St. 546, 552-559 [97 N.E.2d 13] (individual opinion of Taft, J.).)

[12]For example, both remittitur and a new trial limited to damages have been held not to deny the right to jury trial. (See *Northern Pac. R.R. Co.* v. *Herbert,* 116 U.S. 642, 646-647 [29 L.Ed. 755, 758, 6 S.Ct. 590]; *George* v. *Law, supra,* 1 Cal. 363, 365 [remittitur]; *Gasoline Products Co.* v. *Champlin etc. Co.,* 283 U.S. 494, 499-500 [75 L.Ed. 1188, 1190-1191, 51 S.Ct. 513]; *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 801 [197 P.2d 713]; *Taylor* v. *Pole,* 16 Cal.2d 668, 675 [107 P.2d 614] [new trial limited to damages].)

[13]For example, judgment notwithstanding the verdict is allowed in this state in cases where directed verdicts are proper. (*Estate of Baird,* 198 Cal. 490, 506 [246 P. 324].) *Slocum* v. *New York Life Ins. Co.,* 228 U.S. 364 [57 L.Ed. 879, 33 S.Ct. 523], held the granting of a judgment not-

one that preserves the essentials of the right to jury trial without shackling modern procedure to outmoded precedents.

█ Additur does not detract from the substance of the common law trial by jury. █ Like its fraternal twin remittitur, now over 100 years old in this state, it promotes economy and efficiency in judicial proceedings.

There is no essential difference between the procedures appropriate for remittitur and additur, and we may therefore look to remittitur cases to determine the proper procedure for additur.

█ Upon a motion for new trial grounded on insufficiency of the evidence because the damages are inadequate, the court should first determine whether the damages are clearly inadequate and, if so, whether the case would be a proper one for granting a motion for new trial limited to damages. (See e.g., *Hamasaki* v. *Flotho*, 39 Cal.2d 602, 604-607 [248 P.2d 910].)[14] If both conditions exist, the court in its discretion may issue an order granting the motion for new trial unless the defendant consents to an additur as determined by the court. The court's power extends to all such cases. █ It is not limited to those cases in which an appellate court would sustain either the granting or denial of a motion for new trial on the ground of insufficiency of the evidence.[15] █ The court shall prescribe the time within which the defendant must accept the additur, and in no case may this time be longer than the jurisdictional period for granting a new trial. (Code Civ. Proc., § 660; cf. *McDonald* v. *Randolph*, 80 Cal.App.2d 367, 369 [181 P.2d 909].) If the defendant fails to consent within the prescribed time, the order granting the new trial becomes final.

█ If the court decides to order an additur, it should set the amount that it determines from the evidence to be fair

withstanding the verdict to be inconsistent with the Seventh Amendment to the United States Constitution, but the decision has been thoroughly undermined by *Baltimore & Carolina Line* v. *Redman*, 295 U.S. 654 [79 L.Ed. 1636, 55 S.Ct. 890], and Fed.R.Civ.P. 50(b). See *Neely* v. *Martin K. Eby Constr. Co.*, 386 U.S. 317, 321 [18 L.Ed.2d 75, 80, 87 S.Ct. 1072, 1076]; Henderson, *The Background of the Seventh Amendment, supra*, 80 Harv.L.Rev., 289, 337, fn. 211.

[14]There was no contention in the present case that the jury's verdict was the result of passion or prejudice or that it was tainted by prejudicial error occurring at trial.

[15]Since we overrule *Dorsey*, it is unnecessary to limit additur to those cases where the jury's verdict is supported by substantial evidence. (See Code Civ. Proc., § 662.5, added by Stats. 1967, ch. 72, § 2; California Law Revision Commission Study, *supra*, fn. 8, at pp. 608-610, 613-614.)

and reasonable. In this respect it should exercise its completely independent judgment. It need not fix either the minimum or maximum amount that it would have sustained on a motion for new trial or the minimum or maximum amount that would be supported by substantial evidence and therefore sustainable on appeal. ▇▇ If the defendant deems the additur excessive, he may reject it and seek to sustain the jury's award on an appeal from the order granting a new trial. ▇▇ If the plaintiff deems the additur insufficient, he may raise the issue on an appeal from the judgment as modified by the additur.

## II.

▇▇ It remains to be determined whether the trial court may order an additur in cases like the present one that arise under the Federal Employers' Liability Act.

▇▇ In actions brought under the Federal Employers' Liability Act in state courts, substantive rights are controlled by the federal law and procedural matters by the law of the forum. (*Second Employers' Liability Cases,* 223 U.S. 1, 55 [56 L.Ed. 327, 348, 32 S.Ct. 169]; *Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239, 244 [87 L.Ed. 239, 243, 63 S.Ct. 246]; *Davee* v. *Southern Pac. Co.,* 58 Cal.2d 572, 575 [25 Cal.Rptr. 445, 375 P.2d 293].) For many years it seemed clear that additur would be classed as procedural. In 1916 the United States Supreme Court held that the Seventh Amendment had no application to actions brought under the Federal Employer's Liability Act in state courts, and accordingly a state could lawfully dispense with the unanimous verdict required at common law. (*Minneapolis & St. Louis R.R. Co.* v. *Bombolis,* 241 U.S. 211, 217-223 [60 L.Ed. 961, 963-965, 36 S.Ct. 595]; accord *Chesapeake & Ohio Ry. Co.* v. *Carnahan,* 241 U.S. 241, 242 [60 L.Ed. 979, 981, 36 S.Ct. 594] [12 jurors not required].)

In 1952, however, the Supreme Court held that ''the right to trial by jury is too substantial a part of the rights accorded by the Act to permit it to be classified as a mere 'local rule of procedure'. . . .'' (*Dice* v. *Akron, Canton & Y. R.R. Co.,* 342 U.S. 359, 363 [96 L.Ed. 398, 404, 72 S.Ct. 312].) The court held that the question whether a release had been fraudulently obtained was one of fact for the jury, and that Ohio could not apply its general rule that such a fraud issue was to be decided by the court.

Neither in *Dice,* nor in the many cases following it, has *Bombolis* been overruled. In *Dice,* in fact, it was expressly distinguished. (*Dice* v. *Akron, Canton & Y. R.R. Co., supra,* 342 U.S. at p. 363, 96 L.Ed. at p. 404.)　　Accordingly, we do not understand *Dice* to mean that the Seventh Amendment is applicable to actions brought under the Federal Employers' Liability Act in the state courts. Indeed, in noting that the right to trial by jury is "part and parcel of the remedy afforded railroad workers under the Employers Liability Act," the court in *Dice* cited *Bailey* v. *Central Vermont Ry. Co.,* 319 U.S. 350, 354 [87 L.Ed. 1444, 1448, 63 S.Ct. 1062], which held that the right to jury trial is derived from the act. (See also *Rogers* v. *Missouri Pac. R.R. Co.,* 352 U.S. 500, 508-510 [1 L.Ed.2d 493, 500-502, 77 S.Ct. 443].) The degree to which the judge-jury relationship is governed by federal law thus turns on the Supreme Court's interpretation of the act, rather than on the Seventh Amendment.[16]

In interpreting the Federal Employers' Liability Act the Supreme Court has insisted that plaintiffs have a broad primary right to go to the jury on factual issues. (See *Rogers* v. *Missouri Pac. R.R. Co.,* 352 U.S. 500, 508 [1 L.Ed. 2d 493, 500, 77 S.Ct. 443]; cf. Note, 73 Harv.L.Rev. 1551, 1563-1564; *Supreme Court, 1951 Term,* 66 Harv.L.Rev. 89, 162-164.) The cases before and since *Dice* illustrate the court's concern that plaintiffs reach the jury on the issue of liability when there is any evidence, "even the slightest," (*Rogers* v. *Missouri Pac. R.R. Co., supra,* 352 U.S. at p. 506, 1 L.Ed.2d at p. 499) to support the plaintiff's case (see, e.g., *Ferguson* v. *Moore-McCormack Lines, Inc.,* 352 U.S. 521 [1 L.Ed.2d 511, 77 S.Ct. 457]; *Webb* v. *Illinois Central R.R. Co.,* 352 U.S. 512 [1 L.Ed.2d 503, 77 S.Ct. 451]; *Dice* v. *Akron, Canton & Y. R.R. Co., supra,* 342 U.S. 359; *Wilkerson* v. *McCarthy,* 336 U.S. 53 [93 L.Ed. 497, 69 S.Ct. 413]; *Bailey* v. *Central Vermont Ry. Co.,* 319 U.S. 350 [87 L.Ed. 1444, 63 S.Ct. 1062]). Thus, the court has insisted that a case must go to the jury if the evidence favorable to the plaintiff makes out a prima facie

---

[16]See also the court's statement in *Dice* that the "right to trial by jury is too substantial a part of the rights accorded by the Act to permit it to be classified as a mere 'local rule of procedure' *for denial in the manner that Ohio has here used."* (*Dice* v. *Akron, Canton & Y. R.R. Co., supra,* 342 U.S. at p. 363, 96 L.Ed. at p. 404. (Italics added.) We do not understand the statement in *Atlantic & Gulf Stevedores Inc.* v. *Ellerman Lines, Ltd.,* 369 U.S. 355, 360 [7 L.Ed.2d 798, 804, 82 S.Ct. 780], that "the provisions of the Seventh Amendment . . . are brought into play" to be inconsistent with our conclusion, for that case was tried in the federal courts.

case, even though the trial court would be forced to set aside a jury verdict for the plaintiff and grant a new trial based on its view of all the evidence. (*Wilkerson* v. *McCarthy, supra,* 336 U.S. at p. 57, 93 L.Ed. at p. 502.) The court may have believed that trial courts are reluctant to overturn jury verdicts and therefore concluded that more liberal directed verdict standard might adversely affect a plaintiff's chances of recovery. (See Note, 73 Harv.L.Rev. 1551, 1563.)

 Additur does not deprive a plaintiff of the right to go to the jury on any issue or impair the substance of the right to trial by jury. It operates only in the event a plaintiff is dissatisfied with the jury's verdict. It will have no effect on the activities of railroads and their employees and no substantial effect on the outcome of litigation between them. At the same time, it will help implement this state's strong interest in the fair and efficient administration of a voluminous amount of litigation. (Cf. *Byrd* v. *Blue Ridge etc. Cooperative, Inc.,* 356 U.S. 525, 539-540 [2 L.Ed.2d 953, 963-964, 78 S.Ct. 893].) Moreover, since the Seventh Amendment is not applicable we are not bound by *Dimick* or the amendment's reexamination clause, which carries the federal Constitution beyond the substance of the common law right to trial by jury.[17] (Cf. *Parsons* v. *Bedford,* 28 U.S. (3 Pet.) 433, 447 [7 L.Ed. 732, 737].) The California Constitution contains no such clause, and neither it nor the federal act forbid additur just as they do not forbid remittitur. (Cf. *Union Pac. R.R. Co.* v. *Hadley,* 246 U.S. 330, 334 [62 L.Ed. 751, 755, 38 S.Ct. 318]; *Comiskey* v. *Pennsylvania R.R. Co.* (2d Cir. 1956) 228 F.2d 687, 688.)

The order granting a new trial limited to damages shall stand affirmed unless the trial court in its discretion and in accordance with the views expressed in this opinion orders an additur within 30 days after its receipt of our remittitur. If an additur is ordered, it shall be accepted or rejected by defendant within the time prescribed by the trial court, but

---

[17]The most plausible explanation for *Dimick* is that it rested on the reexamination clause of the Seventh Amendment, as opposed to the clause guaranteeing that the right to jury trial "shall be preserved." (See *Bender, supra,* fn. 8, at p. 627, fn. 53.) Moreover, it is doubtful that *Dimick* would be followed today. (See, e.g., *Genzel* v. *Halvorson, supra,* 248 Minn. 527, 531; *Fisch* v. *Manger, supra,* 24 N.J. 66, 74.) There is also authority that the present case is distinguishable from *Dimick* on its facts. (See *United States* v. *Kennesaw Mountain Battlefield Assn.* (5th Cir. 1938) 99 F.2d 830, 834, cert. den.), 306 U.S. 646 [83 L.Ed. 1045, 59 S.Ct. 587] and fn. 14, *supra.*)

the court shall not prescribe a period of time longer than 30 days from the date of its order. Plaintiff shall recover his costs on appeal.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.