[No. E029969. Fourth Dist., Div. Two. July 11, 2002.]

UPLAND ANESTHESIA MEDICAL GROUP, Plaintiff and Appellant, v. THE DOCTORS' COMPANY, Defendant and Respondent.

**COUNSEL**

Call & Jensen and Scott J. Ferrell for Plaintiff and Appellant.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Jeffrey C. Moffat and Mark B. Connely for Defendant and Respondent.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

Upland Anesthesia Medical Group (Upland) appeals from an order of the trial court granting summary adjudication in favor of The Doctors' Company (Doctors), its insurance company. Upland argues it was entitled to a defense in a class action in which it was sued for unfair business practices. The gist of the claims made by the class plaintiffs was that Upland withheld epidural care from indigent women because Medi-Cal would not pay for the procedure.

Doctors relies upon policy exclusion N.12, denying defense or indemnity for an intentional act "even if such activities are related to your rendering or failing to render *professional services.*"

We agree Upland was not entitled to an insurance defense or coverage for the class action and affirm the grant of summary adjudication and entry of judgment in favor of Doctors.

## 2. *Factual and Procedural Background*

The complaint filed by Upland against Doctors alleges three causes of action, fraud, breach of contract, and bad faith. All three causes of action are based on Doctors's refusal to defend or indemnify Upland in the class action.

The following facts were undisputed, or not effectively disputed, for purposes of Doctors's motion for summary judgment or, in the alternative, summary adjudication. Beginning in 1993, Upland followed a policy of "notifying Medi-Cal patients that they would need to pay for any epidural anesthesia in advance of presenting for delivery." As a result, two patients, Marilyn House and Christine Reedy, filed medical malpractice complaints against Upland. Doctors defended both those actions and settled them.

Reedy later became the representative plaintiff in the class action against Upland. The class action sought injunctive relief and restitution under the Business and Professions Code section 17200 et seq. and damages for violation of the Consumers Legal Remedies Act, Civil Code section 1750 et seq. Upland prevailed in the class action when the court sustained its demurrer without leave to amend. Upland spent approximately $63,000 in legal fees defending the class action.

In its summary judgment motion, Doctors argued there was no coverage for the class action under its insurance policy for public policy reasons and because intentional acts were excluded. The court granted summary adjudication on the breach of contract and bad faith causes of action for those reasons. Upland dismissed its fraud claim and now appeals the judgment in favor of Doctors.

## 3. *Standard of Review*

When an order granting summary adjudication disposes of the case, we conduct a de novo review to determine whether there exists a triable issue of material fact.[1] If there is no factual dispute, we consider whether the trial court correctly applied the law to the facts.

---

[1] *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].

### 4. *No Disputed Material Facts*

█ Upland's first contention on appeal is that a factual question exists about whether Doctors initially provided legal representation to Upland in the class action case and therefore waived any objection to providing coverage. This matter was not presented in Upland's opposing separate statement, although it was argued in supplemental briefing. Some cases have held disputed facts must be presented in the separate statement: "A party waives a new theory on appeal when he fails to include the underlying facts in his separate statement of facts in opposing summary judgment."[2] Following those cases would cause us to exclude consideration of whether a Doctors's attorney, Larry Wong, represented Upland in the class action case.

Other cases have emphasized the need to consider all the submitted papers: "The evidence and affidavits of the moving party are construed strictly, while those of the opponent are liberally read."[3] But, even if we consider Upland's evidence concerning whether Wong represented Upland in the class action, we conclude, as argued by Doctors, that Wong's deposition testimony demonstrates he represented Upland in the two medical malpractice actions, not the class action, in which Call, Clayton, & Jensen represented Upland. The only appearances made by Wong in the class action litigation were in connection with the malpractice cases to prevent the doctor-witnesses from being deposed twice. Upland offers a strained misinterpretation of Wong's testimony but not a disputed material fact.

As to the existence of any other disputed facts, in reviewing the separate statements submitted by the parties, we discern no material disputed facts although the parties interpret some of the facts differently. Upland attempts one actual point of disagreement. As an undisputed fact, Doctors states its insurance policy contains the terms of the written contract between Doctors and Upland. In opposition, Upland responds that Doctors promised to defend Upland against any nonmeritorious lawsuits and Doctors gave assurances that its insurance policy would protect Upland against "any liability exposure." Upland asserts those promises and assurances were incorporated into the terms of the insurance policy. As evidence, Upland cites a declaration by an Upland doctor, Dr. Chu, in which he refers to statements made in promotional materials supplied by Doctors. But Upland's disagreement

---

[2]*City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1493 [55 Cal.Rptr.2d 422], citing *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30-32 [21 Cal.Rptr.2d 104].

[3]*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 100 [93 Cal.Rptr.2d 820], citing *Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 112 [54 Cal.Rptr.2d 669].

about the scope of the coverage under the insurance contract does not constitute a disputed material fact. Rather Upland is asserting a legal argument about contractual interpretation we will discuss below.

Hence we conclude there are no disputed material facts and analyze the legal correctness of the court's ruling.

### 5.  Public Policy

In *Bank of the West v. Superior Court*,[4] the California Supreme Court held that an insurance policy cannot cover consumer claims for violations of the Unfair Practices Act[5] "to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains."[6]

Upland argues Doctors cannot raise a public policy argument as a reason to deny coverage for the first time in its summary judgment motion. Upland is wrong: "[A]n insurer does not impliedly waive coverage defenses it fails to mention when it denies the claim."[7]

Upland also tries to limit the holding in *Bank of West* to prohibiting indemnity for a claim but not the defense of a claim, relying on *American Cyanamid Co. v. American Home Assurance Co.*[8] That case, however, concerned the common law tort of unfair competition between competitors, for which there can be insurance coverage, as distinguished from statutory unfair trade practices against consumers, for which there cannot be insurance coverage: "Coverage is available only when there is a claim of competitive injury."[9] Otherwise, there is no duty to defend.[10]

Finally, Upland argues it had an objectively reasonable expectation of coverage that defeats any public policy considerations. It relies on several

[4]*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].

[5]Business and Professions Code section 17200 et seq.

[6]*Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 449 [153 Cal.Rptr. 28, 591 P.2d 51].

[7]*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619].

[8]*American Cyanamid Co. v. American Home Assurance Co.* (1994) 30 Cal.App.4th 969 [35 Cal.Rptr.2d 920].

[9]*American Cyanamid Co. v. American Home Assurance Co., supra,* 30 Cal.App.4th at page 977.

[10]*American Cyanamid Co. v. American Home Assurance Co., supra,* 30 Cal.App.4th at page 977.

items of evidence. Upland's Dr. Chu stated in his declaration that he believed Doctors would defend Upland in a class action. His opinion was based on Doctors's promotional materials stating a policy "to defend resolutely all nonmeritorious claims" and a plan to "develop programs that will protect you from today's liability exposures—and tomorrow's."

What Upland fails to do is identify any ambiguity in the subject insurance policy that would allow the court to evaluate Upland's contrary expectations and construe the ambiguity in favor of Upland.[11] Upland's argument about its expectation of coverage fails.

### 6. *Intentional Acts Exclusion*

Upland's last sequence of arguments involves the inapplicability of the policy exclusion for intentional acts. Upland repeats the argument about its expectation of coverage. But, as we have just held, Upland has not successfully shown the policy is ambiguous and therefore subject to judicial interpretation in favor of the insured's objectively reasonable expectation of coverage.

Next Upland mistakenly asserts that the statutory exception against coverage for an insured's willful acts, as provided in Insurance Code section 533, should be used to interpret the meaning of the intentional acts exclusion in the insurance policy. We decline Upland's invitation, unsupported by any authority, to interpret the contract and the statute as equivalent.

Finally, Upland maintains the evidence shows the class action was actually negligence based and therefore subject to coverage. Again, no such evidence was submitted as part of Upland's opposing statement. But we will review it nonetheless.

In the class action, the Los Angeles Superior Court issued a ruling granting a motion to strike the punitive damages claim for failure to comply with Code of Civil Procedure section 425.13, subdivision (a): "The section[12] does not require that there be a cause of action for medical malpractice, it only requires that it 'arise out of the professional negligence of a health care provider. . . .' Here, that is what is being alleged." Upland points to this ruling as deciding the character of the class action as being one for negligence. We acknowledge Doctors's legitimate complaints about the

---

[11]*State Farm Mut. Auto Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 197 [110 Cal.Rptr. 1, 514 P.2d 953]; *Mez Industries, Inc. v. Pacific Nat. Ins. Co.* (1999) 76 Cal.App.4th 856, 868-869 [90 Cal.Rptr.2d 721].

[12]Code of Civil Procedure section 425.13.

lack of foundation for this document. But even if the ruling is accepted as genuine, it does not establish that the class action was for negligence.

In the first amended class action, the plaintiffs alleged that Upland "unlawfully, unfairly and fraudulently demanded cash payments from pregnant women, in the throes of childbirth labor, as an additional price for pain-mitigating, epidural anesthesia." The class action further alleges that Upland and other defendants conspired "to disadvantage, damage, defraud and injure Plaintiffs, and to improperly and illegally profit from Plaintiffs' disabled and disadvantaged conditions." The complaint proceeds to describe a scheme of willful misconduct by which Upland and other defendants solicited improper and illegal cash payments for epidural anesthesia, otherwise threatening to deny such relief. It continues in this vein alleging unfair trade practices under the Business and Professions Code and violations of the Consumer Legal Remedies Act, Civil Code section 1750 et seq. The plaintiffs also claimed to be "disabled persons" under Civil Code sections 1761, subdivision (g), and 1780.

No allegations of negligence—such as duty, breach, and causation—are made. The court ruling on the motion to strike punitive damages in the class action may have determined the allegations demonstrated an injury "directly related to the professional services provided by the health care provider."[13] But that interim ruling on a collateral issue did not convert the class action into a negligence complaint.

Nor are we persuaded by Upland's reliance on a declaration from Scott Leviant, another piece of belated supplemental evidence that was not incorporated into Upland's opposing separate statement. Leviant, an attorney in the class action suit, states in his declaration that the 27-page class action complaint is for negligence because it seeks recovery for "physical, emotional, and economic damages"; because it alleges defendants "knew or should have known that their conduct was directed at profoundly vulnerable disabled persons"; and because the allegations are not expressly limited to intentional acts.

The interpretation of pleadings is a matter of law by the court.[14] We have reviewed the class action complaint and hold it is not for negligence. It alleges a series of intentional acts related to the rendering of or failure to render professional services. The intentional acts exclusion operates to deny insurance coverage to Upland.

---

[13]*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 191 [10 Cal.Rptr.2d 208, 832 P.2d 924].

[14]*Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 830 [59 Cal.Rptr. 276, 427 P.2d 988].

### 7. *Disposition*

The judgment is affirmed. Doctors shall recover its costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.

On August 5, 2002, the opinion was modified to read as printed above.