[No. F063071. Fifth Dist. Sept. 4, 2012.]

BARRY S. HALAJIAN, Plaintiff and Appellant, v.
D & B TOWING et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., III. and IV.C. of the Discussion.

**COUNSEL**

Barry S. Halajian, in pro. per., for Plaintiff and Appellant.

Henry, Logoluso & Blum, Timothy V. Logoluso and Manuel L. Bettencourt for Defendants and Respondents.

**OPINION**

**FRANSON, J.—**

## INTRODUCTION

Plaintiff Barry S. Halajian sued a towing company for (1) wrongfully withholding his personal property, a 1998 Dodge light truck, for 38 days and (2) requiring him to pay $1,385 before releasing the truck. The towing company filed a demurrer, arguing that the pickup truck had been lawfully impounded by the sheriff's department and lawfully towed and stored. The towing company also argued that, under California statute, plaintiff had no right to immediate possession of the truck until he paid the fees required for its release.

The trial court sustained the demurrer without leave to amend based on its conclusion that the towing company's actions were legal and, therefore, plaintiff was unable to state a claim for recovery. Plaintiff appealed, arguing that the seizure of his light truck violated his Fourth Amendment right to be free from unreasonable seizures, his constitutional right to travel and his right to due process. He also argued that California's Vehicle Code's licensing and registration requirements were misapplied to him and his noncommercial use

of the light truck. Plaintiff contends the towing company was responsible for knowing the law and, thus, should have recognized these violations of his rights and the resulting illegality of its possession of his truck.

The primary question on appeal is whether the towing company's possession of plaintiff's truck was wrongful. In the published portions of this opinion, we conclude that the sheriff's department's impounding of the truck did not violate plaintiff's right to travel, was not an unreasonable seizure, and did not misapply the Vehicle Code to his noncommercial use of the truck. In an unpublished portion, we conclude that plaintiff's due process rights were not violated. Thus, the towing company's possession of the truck did not continue a wrongful seizure or confiscation of the truck. In addition, the towing company stored and released the truck in accordance with applicable law. Consequently, the towing company committed no wrong and cannot be held liable for damages.

Therefore, we affirm the order of dismissal.

## FACTS AND PROCEEDINGS

### The Parties

Plaintiff is an electrical contractor who specializes in industrial construction. He describes himself as a "free inhabitant of the California Republic" as indicated in the 1849 Constitution of the California Republic, section 4 of article IV of the Constitution of the United States, and article IV of the Articles of Confederation. At the time of the traffic stop that led to this litigation, plaintiff did not have a driver's license and his light truck was not registered.

D & B Towing and its owner, Bob Barnes, were named as defendants. D & B Plumbing, Inc., a California corporation that does business as D & B Towing, appeared in this lawsuit and asserted it was incorrectly sued as D & B Towing. Robert L. Barnes also appeared, stating he was incorrectly sued as Bob Barnes. The defendant corporation and Barnes are referred to as "Towing Company" in this opinion.

### The Facts

Early in the morning on November 30, 2010, Sergeant Terrence of the Fresno County Sheriff's Office (Department) stopped plaintiff while he was traveling to a jobsite in his light truck. Plaintiff told the sergeant that he had returned the vehicle registration and his driver's license to the Department of Motor Vehicles (DMV) because plaintiff realized that all licensing is for

commercial use of the road. Plaintiff alleges he was not engaged in commercial use of the roadway and was not transporting persons or property for hire. Instead, plaintiff contends he was exercising an inalienable right—the right of travel.

Plaintiff alleges that he was charged with violating California Vehicle Code sections "148(a)(1), 14601.1(a), 4462.5 and 4000(a)(1)"[1] and the Department relied on these sections to confiscate and impound his truck. More specifically, plaintiff asserts that his truck "was towed for the simple fact that [he] did not have a driver's license."

Between 4:20 and 5:00 a.m. on November 30, 2010, the sergeant contacted Towing Company to remove plaintiff's truck, even though it was parked safely and properly in a convenience store parking lot.[2] When the truck was towed, it was not obstructing or impeding the flow of traffic and had not been involved in an accident. Plaintiff repeatedly objected to the actions of the Department and Towing Company, but his objections were ignored. Plaintiff was unable to get the name of the Towing Company's driver because he was handcuffed in the Department's vehicle at the time.

In December 2010, plaintiff sent Towing Company two letters by certified mail demanding the return of his truck and setting forth his position as to why the taking of his truck was unlawful. Towing Company did not respond to the letters.

*The Pleadings*

On January 3, 2011, plaintiff filed a pleading captioned "Petition for Writ of Replevin" alleging that Towing Company was wrongfully withholding his truck. The pleading sought the return of the truck.

On January 4, 2011, plaintiff sent Towing Company another letter demanding the return of his truck and offering to dismiss the lawsuit if his truck was

---

[1] There was no Vehicle Code section 148 in effect in 2010. The reference may be to Penal Code section 148, subdivision (a)(1), which prohibits willful resistance, delays or obstruction of a peace officer in the discharge of his or her duties.
Vehicle Code section 14601.1, subdivision (a) states that "[n]o person shall drive a motor vehicle when his or her driving privilege is suspended or revoked . . . ."
Vehicle Code section 4462.5 provides that anyone who violates the statutory requirement to present a vehicle registration card to a peace officer upon demand with the intent to avoid compliance with vehicle registration requirements is guilty of a misdemeanor.
Vehicle Code section 4000, subdivision (a)(1) provides that a person shall not drive upon a highway any motor vehicle unless it is registered and the appropriate fees have been paid.

[2] At the hearing on the demurrer, plaintiff stated that he knew the owner of the convenience store, implying that the owner would not have objected to the truck staying there instead of being towed.

returned in the same condition as when it was unlawfully taken and Towing Company paid him $395 for filing fees and time spent.

On January 6, 2011, plaintiff went to Towing Company's place of business, paid the $1,385 in towing and storage fees, and regained possession of the truck. Plaintiff paid the fees to prevent the truck from being sold at a lien sale the next day.

In February 2011, plaintiff filed an amendment to his petition for writ of replevin. The amendment appears to have been drafted to account for the fact that plaintiff had regained possession of the truck. In the amendment, plaintiff alleged Towing Company had wrongfully and unlawfully held his truck against his will for 38 days and charged a storage fee for it. Plaintiff also alleged he was entitled to damages in the amount of $23,705.90.

Plaintiff attached six exhibits to the amendment: (1) the three letters he sent to Towing Company, (2) a DMV registration card for the truck,[3] (3) an invoice from him to Towing Company that showed how plaintiff calculated his damages, and (4) Towing Company's receipt for the $1,385 in charges that plaintiff paid.

*The Demurrer*

Later in February 2011, Towing Company filed a general and special demurrer against plaintiff's petition and amendment. In support of its demurrer, Towing Company requested judicial notice of copies of (a) the "Fresno County Sheriff's Department Vehicle Report" dated November 30, 2010, regarding the impounding and storage of plaintiff's 1998 Dodge truck and (b) the Department's impound release notification dated January 6, 2011.

The hearing on the demurrer was held on March 21, 2011. In early March, plaintiff filed an opposition to the demurrer and a request for judicial notice. Three days before the hearing, plaintiff also filed a pleading titled "Second Amended Complaint for Deprivation of Rights Under Color of Authority and Replevin of Property or in the Alternative Detinue and an Order to Cease and Desist." (Some capitalization omitted.)[4]

Plaintiff's proposed second amended complaint asserted that he was not a "driver" of a "motor vehicle" and, therefore, his activity was outside the

---

[3] The registration card stated plaintiff was the registered owner and listed (1) the date issued as January 24, 2011, (2) the date the fee was received as November 30, 2010 (also the date the truck was towed), and (3) the previous expiration date as November 30, 2009.

[4] Plaintiff's proposed second amended complaint never became the operative pleading in this case. For purposes of this appeal, we have treated that document as plaintiff's attempt to show the additional allegations he could have made if given leave to amend. (See pt. II.C., *post.*)

scope of California's Vehicle Code. (Boldface & italics omitted.) In other words, he was not bound by any provisions of law requiring licensing and payment of taxes to use the highways. In plaintiff's view, members of the public "have an absolute right to use of the highways and are not subject to licensing and taxation" so long as they do not transport persons or property for hire.

*Hearing on Demurrer*

On the day of the March 21 hearing, the Department delivered documents to the court that responded to a subpoena duces tecum sent by plaintiff. In the subpoena, plaintiff requested (1) the towing agreement between Towing Company and the Department that was in effect on November 30, 2010, (2) documents showing the criteria for impounding cars and light trucks, and (3) the Department's policy on towing. The parties agreed at the hearing that the trial court could look at the documents in considering the demurrer.[5]

During the hearing, counsel for Towing Company argued that plaintiff could not state a claim because the law did not allow Towing Company to release the truck until the fines were paid and it was presented with a vehicle release form issued by the Department. Counsel further argued that the Department was the entity that actually impounded the truck and Towing Company simply acted as a storage locker for the Department and released the truck as soon as instructed to do so by the Department.

Plaintiff, representing himself at the hearing, argued that impounding his truck flew in the face of *Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858 (*City of Cornelius*), which held that a vehicle could not be impounded or towed unless it was impeding traffic, had been in an accident, or otherwise met the requirements of the community caretaking doctrine. In plaintiff's view, none of the conditions of the community caretaking doctrine applied because the truck was parked safely in a convenience store parking lot. In addition, plaintiff argued Towing Company should know the law and the limits of what it could and could not do under the law and, as a result, should not have followed the unlawful directions of the Department. Further, plaintiff asserted that ignorance of the law does not excuse Towing Company from responsibility for its wrongful actions.

---

[5] The documents are not part of the appellate record. Their absence has not affected the result in this appeal because we assume, as required by the applicable standard of review, that plaintiff's allegations about their contents are true and, more importantly, the contents of the documents do not impact the fundamental question whether the seizure and detention of plaintiff's truck was lawful.

*Order Sustaining Demurrer*

Following argument, the trial court took the matter under submission. On June 2, 2011, the trial court filed an order (1) sustaining, without leave to amend, Towing Company's general demurrer to the petition and amendment and (2) striking, on its own motion, the second amended complaint plaintiff filed on March 18, 2011. The court determined that the Department had the authority under Vehicle Code section 22651, subdivision (h)(1) to have the truck removed upon plaintiff's arrest and custody. The court also determined that plaintiff did not have a right to immediate possession of the truck during the impound period because he had not met the conditions for obtaining the release of a vehicle stated in Vehicle Code section 22651, subdivision (i)(4)(A).

On June 15, 2011, the trial court signed and filed an order stating "that the above-entitled action as to [Towing Company] be, and hereby is, dismissed, with prejudice."

In July 2011, Halajian filed a timely notice of appeal and an amended notice of appeal.

## DISCUSSION

I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. *WRONGFULNESS OF THE IMPOUNDING OF THE TRUCK*

The judgment of dismissal will be reversed and the order sustaining the demurrer vacated if plaintiff's complaint, as amended, alleged facts sufficient to state a cause of action for the conversion of his truck. (Code Civ. Proc., § 430.10, subd. (e).) The sufficiency of plaintiff's allegations turns on whether the facts he alleged show Towing Company's possession of the truck was wrongful. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 692, p. 110 [the "wrongful exercise of dominion over the personal property of another, whether it involves wrongful taking or lawful taking and wrongful withholding, constitutes the tort of conversion"].)

Plaintiff's papers include a number of legal arguments to support his position that Towing Company's impounding or withholding of his truck was wrongful. Plaintiff contends that (1) his arrest and the impound of his truck

---

*See footnote, *ante*, page 1.

was unlawful because it violated his right to travel, (2) the impound of his truck was an illegal seizure that violated the Fourth Amendment, (3) the deprivation of his property without notice and a hearing violated his due process rights, and (4) the Vehicle Code was misapplied.

Our analysis of the wrongfulness of the impounding and withholding of plaintiff's truck will take into consideration plaintiff's allegations that (1) at the time of the traffic stop, he did not have a driver's license and his truck was not registered and (2) the truck was released after he paid $1,385 in towing and storage fees.

## A. *The Right to Travel*

Plaintiff contends that he and other members of the public have an absolute right to travel on highways by automobile without licensing or taxation unless they are transporting persons or property for hire. He argues that the right to travel on highways is clearly established and that he was relying on United States Supreme Court rulings when he was traveling on the highway without a state-issued driver's license.

### 1. *Articles of Confederation*

The oldest source referenced by plaintiff for his inalienable right to travel is article IV of the Articles of Confederation. That article, as quoted by the Supreme Court in *Austin v. New Hampshire* (1975) 420 U.S. 656 [43 L.Ed.2d 530, 95 S.Ct. 1191], provides: " 'The better to secure and perpetuate mutual friendship and intercourse among the people of the different States in this Union, the free inhabitants of each of these States . . . shall be entitled to all privileges and immunities of free citizens in the several States; and *the people of each State shall have free ingress and regress to and from any other State*, and shall enjoy therein all the privileges of trade and commerce, subject to the same duties, impositions and restrictions as to the inhabitants thereof respectively.' " (*Id.* at p. 660, italics added.)

We conclude this provision confers no rights upon plaintiff. First, California was not among the states that adopted or ratified the Articles of Confederation. Therefore, California is not one of the "States in this Union" or a "State" as that term is used in article IV of the Articles of Confederation. It follows that plaintiff is not among "the people of each State" whose right to "free ingress and regress to and from any other State" was acknowledged by article IV. Second, the Articles of Confederation are no longer in effect, having been superseded by the Constitution of the United States in 1789. (*Saenz v. Roe* (1999) 526 U.S. 489, 524 [143 L.Ed.2d 689, 119 S.Ct.

1518].)[10] Accordingly, article IV of the Articles of Confederation is of interest in this case primarily because it provides historical background for the constitutional right to travel.

## 2. *Constitutional Protection*

In contrast to the explicit reference in the Articles of Confederation to the right of the people to move to and from other states, neither the United States Constitution nor the California Constitution mentions the right to travel. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1210 [86 Cal.Rptr.2d 778, 980 P.2d 337]; *In re White* (1979) 97 Cal.App.3d 141, 148 [158 Cal.Rptr. 562].) Despite the absence of an express guarantee, state and federal courts have recognized the right to travel as a fundamental right entitled to constitutional protection. (*United States v. Guest* (1966) 383 U.S. 745, 757–758 [16 L.Ed.2d 239, 86 S.Ct. 1170]; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1096–1097 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Indeed, over 30 years ago, this court concluded "that the right to intrastate travel (which includes intramunicipal travel) is a basic human right protected by the United States and California Constitutions as a whole. Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law. [Citations.]" (*In re White, supra*, 97 Cal.App.3d at p. 148.)

In plaintiff's view, the "California Supreme Court has made it abundantly clear that the citizens and the public, in general, have an absolute right to use the highways and are not subject to licensing and taxation as are those individuals and corporations who transport persons or property for hire." Plaintiff supports his position by citing a number of older cases[11] and referring to our Supreme Court's statement that the use of highways for purposes of travel and transportation is " ' "a common and fundamental right" ' " and " ' "[a]ll persons have an equal right to use them for purposes

---

[10] Plaintiff appears to argue that California's towing statute, Vehicle Code section 22651, does not apply to him because he is a "free inhabitant." If plaintiff is arguing that the protections provided to free inhabitants by the Articles of Confederation override the statute, we reject that argument because the Articles of Confederation do not apply to plaintiff.

[11] *In re Bush* (1936) 6 Cal.2d 43, 52–53 [56 P.2d 511] (bulk station operator was subject to Cal. Motor Vehicle Transportation License Tax Act because he was compensated indirectly for hauling petroleum products upon public highways in his truck); *Frost v. Railroad Commission* (1925) 197 Cal. 230 [240 P. 26] (railroad commission had power to regulate private carriers that transport property for hire on public highways in competition with regulated common carriers), revd. (1926) 271 U.S. 583 [70 L.Ed. 1101, 46 S.Ct. 605]; *Rush v. Lagomarsino* (1925) 196 Cal. 308, 317 [237 P. 1066] ("common right to the use of the public highways"); *Pacific Gas & Electric Co. v. Roberts* (1914) 168 Cal. 420, 427 [143 P. 700] (the "common use of the highways is open to all"); and *Ex parte Dickey* (1915) 76 W.Va. 576 [85 S.E. 781] (comparing right of citizen to travel upon highway in the ordinary course of life and business with one who makes the highway his place of business, such as running a stage or omnibus).

of travel by proper means, and with due regard for the corresponding rights of others." ' " (*Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 550 [183 Cal.Rptr. 73, 645 P.2d 124], italics omitted; see *City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 857 [280 Cal.Rptr. 368].) Plaintiff's absolutist view fails to acknowledge the significance of the phrase "by proper means," which indicates that the Legislature has some control over determining which means are proper, such as prohibiting unlicensed drivers and unregistered vehicles. (See *Hendrick v. Maryland* (1915) 235 U.S. 610, 622 [59 L.Ed. 385, 35 S.Ct. 140] [a state may regulate the operation of motor vehicles on its highways by requiring the registration of vehicles and the licensing of drivers, in the absence of national legislation covering the subject and provided the state's action is reasonable and does not burden interstate commerce].)

█ Moreover, this court already has addressed whether the constitutional right to travel is absolute and concluded that "the right of free movement is not absolute and may be reasonably restricted in the public interest." (*In re White, supra,* 97 Cal.App.3d at p. 149.) As a result, conditions that negatively affect the right to travel are not automatically invalid. (*Ibid.*) Only statutes, rules, or regulations that *unreasonably* burden or restrict the right to travel are constitutionally impermissible. (*Shapiro v. Thompson* (1969) 394 U.S. 618, 629 [22 L.Ed.2d 600, 89 S.Ct. 1322], overruled on another ground in *Edelman v. Jordan* (1974) 415 U.S. 651 [39 L.Ed.2d 662, 94 S.Ct. 1347]; see *Valov v. Department of Motor Vehicles* (2005) 132 Cal.App.4th 1113, 1122 [34 Cal.Rptr.3d 174] [driver's license photograph requirement not reviewed under strict scrutiny standard].)

Based on the foregoing, we will consider whether California's driver's license requirement and automobile registration requirement are valid as reasonable restrictions that further the public interest or, alternatively, are unreasonable burdens on the right to travel.

### 3. *Vehicle Registration Is a Reasonable, Incidental Burden*

Our inquiry into the reasonableness of the burden the vehicle registration requirement imposes on the right to travel includes the consideration of the nature and extent of the requirement's impact on travel, the importance of the public interests served by the registration requirement, and the efficacy of the registration requirement in furthering those interests.

█ With regard to impact, the vehicle registration requirement is not a direct restriction on the right to travel to or through a particular area. Instead, it is an incidental burden on a single mode of transportation. (See *Miller v. Reed* (9th Cir. 1999) 176 F.3d 1202, 1205 [stating that "burdens on a single

mode of transportation do not implicate the right to interstate travel"].) Neither the United States Supreme Court nor the California Supreme Court has ever held "that the *incidental* impact on travel of a law having a purpose other than the restriction of the right to travel, and which does not discriminate among classes of persons by penalizing the exercise by some of the right to travel, is constitutionally impermissible." (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1100, italics added.) Thus, the vehicle registration requirement is not a heavy burden on the right to travel.

The public interests served by the requirement that automobiles be registered has been addressed by the California Supreme Court: "The requirements for registration were enacted in the interests of public welfare, and one of the purposes for the legislation is to afford identification of vehicles and persons responsible in cases of accident and injury." (*Dorsey v. Barba* (1952) 38 Cal.2d 350, 354 [240 P.2d 604], overruled on another ground in *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 828 [59 Cal.Rptr. 276, 427 P.2d 988].) Another purpose is the protection of innocent purchasers. (*Henry v. General Forming, Ltd.* (1948) 33 Cal.2d 223, 227 [200 P.2d 785].) These California Supreme Court cases establish that the registration requirement furthers legitimate public interests.

■ Furthermore, registration is an effective, logical way to achieve the legitimate public interest in identifying cars and trucks, as well as their owners. Therefore, we conclude that California's requirement that cars and trucks be registered imposes a reasonable burden on the right to travel and, thus, is constitutional. (See generally 7A Am.Jur.2d (2007) Automobiles and Highway Traffic, § 254, p. 710 ["Statutes requiring persons to . . . register an automobile with the state fall within the scope of the state's police power, and do not implicate a motorist's constitutional right to travel." (fn. omitted)].)

### 4. *Driver's License Requirement Is Reasonable*

■ Like the registration requirement, the impact of California's driver's license requirement on the right to travel is incidental. (See *League of United Latin American Citizens v. Bredesen* (6th Cir. 2007) 500 F.3d 523, 535 [certificates for driving that Tenn. required for temporary resident aliens were an incidental and negligible burden on the right to travel].) The requirement is a valid exercise of the state's police power because the requirement is rationally related to the legitimate state interest in safeguarding the health and safety of its citizens. To obtain a driver's license, individuals must pass a test showing their knowledge of the traffic laws and their physical ability to control an automobile or truck. By granting licenses only to people who have passed the test, California has increased the safety of its highways and streets.

Our conclusion that California's licensure requirement is reasonable and does not violate the constitutionally protected right to travel is consistent with cases addressing the constitutionality of other state's licensing requirements. For example, in *Kaltenbach v. Breaux* (W.D.La. 1988) 690 F.Supp. 1551, the petitioner argued "that state regulations requiring driver's licenses, motor vehicle registration, and safety inspection tags violate his federally protected right to travel." (*Id.* at p. 1553.) The court rejected this argument on the ground that the regulations were a valid exercise of the state's police power because the regulations were rationally related to protecting the health and safety of the state's citizens and the means employed by the state were rationally related to the purpose of the statutes. (*Id.* at pp. 1554–1555; *Meisman v. Fremont County, Colo.* (D.Colo., Nov. 7, 2011, No. 11-cv-02686-BNB) 2011 WL 5331694 [Colo.'s driver's license requirement did not violate constitutional right to travel]; *State v. Stevens* (Utah 1986) 718 P.2d 398 [Utah's statute requiring a driver's license did not violate defendant's right to travel].)

In *Matthew v. Honish* (7th Cir. 2007) 233 Fed.Appx. 563, the court affirmed the dismissal of the plaintiff's lawsuit against the state trooper who stopped his car and ticketed him for failing to have a license. The court stated that the plaintiff's argument that the Wisconsin licensure requirement violated the right to travel was meritless. (*Id.* at p. 564.) Similarly, the plaintiff in *Hallstrom v. City of Garden City* (9th Cir. 1993) 991 F.2d 1473 was arrested after a traffic stop when she refused to show the officer a driver's license or proof of insurance. (*Id.* at p. 1476.) She told the officer that requiring her to carry a license violated her right to travel. (*Ibid.*) The court concluded that the Idaho law requiring drivers to be licensed was valid and rejected her claim that the arrest violated her constitutional rights. (*Ibid.*)

■ In summary, we conclude that California's statutes requiring (1) the registration of automobiles and trucks and (2) driver's licenses for persons who are in actual physical control of a car or truck moving on California's streets and highways do not unreasonably burden the right to travel and, therefore, do not violate the state or federal Constitution. Thus, plaintiff's constitutional right to travel provides no basis for concluding Towing Company's withholding of the truck was "wrongful" for purposes of the tort of conversion.

## B. *Fourth Amendment Seizure*

■ The Fourth Amendment to the United States Constitution protects the people and their effects "against unreasonable searches and seizures . . . ." Article I, section 13 of the California Constitution, using similar text, also protects the right of the people to be secure against unreasonable searches

and seizures. (*Strauss v. Horton* (2009) 46 Cal.4th 364, 493, fn. 5 [93 Cal.Rptr.3d 591, 207 P.3d 48].)

Plaintiff contends that the impounding of his truck was a seizure within the meaning of the Fourth Amendment, was done without a warrant, and was not reasonable under the community caretaking exception to the Fourth Amendment's warrant requirement (i.e., concern for the safety of the general public). (See *Cady v. Dombrowski* (1973) 413 U.S. 433 [37 L.Ed.2d 706, 93 S.Ct. 2523] [community caretaking exception first articulated by Supreme Court].)[12]

Plaintiff relies heavily on *City of Cornelius, supra,* 429 F.3d 858, to support his argument that the community caretaking doctrine does not apply to the facts of this case. Here, the trial court concluded that plaintiff's situation was distinguishable from *City of Cornelius*, because (1) the vehicle impounded in that case was safely and securely in the driveway of the owners, (2) the vehicle had a valid registration, and (3) one of the owners had a valid driver's license. (*Id.* at p. 867.) Because none of these three factors is present in this case, we agree with the trial court and conclude that the impounding of plaintiff's truck was justified under the community caretaking doctrine. As a result, the towing and impounding of plaintiff's truck was not an unreasonable seizure in violation of his Fourth Amendment rights.

 In the role of "community caretaker," peace officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic. (See *South Dakota v. Opperman* (1976) 428 U.S. 364, 368–369 [49 L.Ed.2d 1000, 96 S.Ct. 3092].) Factors relevant to whether a particular impoundment is justified include the location of the vehicle and the likelihood it will create a hazard to other drivers or be a target of vandalism or theft. (*City of Cornelius, supra,* 429 F.3d at p. 864.) For example, the court in *City of Cornelius* stated no public safety concern was implicated because the vehicle was parked in the driveway of an owner who had a valid license. (*Ibid.*)

In this case, the truck was not located in plaintiff's driveway, but was in a private parking lot. (See *Hallstrom v. City of Garden City, supra,* 991 F.2d at p. 1477, fn. 4 [it was reasonable under community caretaking doctrine to impound arrestee's car from a private parking lot to protect the car from vandalism or theft].)

---

[12] We note that this theory for why the impounding and withholding of plaintiff's truck was legally wrong does not depend upon plaintiff's arrest being unconstitutional or otherwise unlawful.

In addition, unlike the van in *City of Cornelius*, plaintiff's truck did not have a valid registration. Leaving the unregistered truck in the convenience store parking lot would have created a risk that the truck would be driven again while unregistered, either by the unlicensed plaintiff or someone with a driver's license. Any operation of the truck on a public roadway before it became validly registered would have violated subdivision (a)(1) of Vehicle Code section 4000, a statute intended to further public safety (see pt. IV.A., *ante*). Therefore, the Department's decision to impound plaintiff's truck promoted public safety by preventing the truck from being operated on public highways and streets while it remained unregistered.

In summary, impounding plaintiff's truck was a seizure for purposes of the Fourth Amendment, but the warrantless seizure was reasonable under the community caretaking doctrine. Thus, Towing Company's exercise of dominion over the truck was not rendered unlawful by a violation of plaintiff's Fourth Amendment rights.

### C. *Due Process Right to Notice and a Hearing*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. *Application of the Vehicle Code to Noncommercial Travel*

Plaintiff contends that the Vehicle Code has been misapplied to his situation. Plaintiff's first argument is based on the meaning of "driver." His second argument involves a statutory construction of Vehicle Code section 15210 that has not been addressed in a published opinion.

#### 1. *Plaintiff Is a Driver*

Plaintiff contends he is not a "driver of a motor vehicle" because a driver is someone who makes *commercial* use of the highways and streets. Plaintiff asserts he told the DMV that he does not "drive" a "motor vehicle" and the DMV consistently has refused to acknowledge that he is traveling in a lawful "conveyance of the day."

 Vehicle Code section 305 defines "driver" as "a person who drives or is in actual physical control of a vehicle." "A 'vehicle' is a device by which any person or property may be propelled, moved, or drawn upon a

---

[*]See footnote, *ante*, page 1.

highway, excepting a device moved exclusively by human power or exclusively upon stationary rails or tracks." (Veh. Code, § 670.) When these definitions are applied to the facts alleged by plaintiff, it leads to the conclusion that he was a "driver" when he was operating his truck before being pulled over by Sergeant Terrence.

Plaintiff's argument about what constitutes driving has been considered and rejected by other courts. For example, in *State v. Davis* (Mo.Ct.App. 1988) 745 S.W.2d 249, the defendant was convicted of operating a motor vehicle without a valid driver's license. On appeal, the defendant argued the statute requiring a valid license did not apply because "he was merely 'traveling in a conveyance' rather than 'driving a motor vehicle.' " (*Id.* at pp. 249–250.) The court upheld the conviction, concluding that because the defendant was in actual physical control of the pickup truck, he was operating a motor vehicle for purposes of the statute. (*Id.* at p. 252; see generally Comment: *The "Usurping Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement* (1999) 1999 Wis. L.Rev. 785, 799–800 [discussing the position that the right to travel precludes regulation of noncommercial use of vehicles].)

Therefore, we reject plaintiff's argument that he was not a "driver" for purposes of the Vehicle Code.

### 2. *Interpretation of Vehicle Code Section 15210*

Plaintiff also presents a more complex argument regarding why the Vehicle Code licensure requirement does not apply to him. His argument begins with Vehicle Code section 12500, subdivision (a), which states: "A person may not drive a *motor vehicle* upon a highway, unless the person then holds a valid driver's license issued under this code, *except those persons who are expressly exempted under this code.*" (Italics added.) Plaintiff contends that the term "motor vehicle" used in this provision carries the meaning found in section 31(a)(6) and (10) of title 18 of the United States Code. These federal definitions apply because, as interpreted by plaintiff, Vehicle Code section 15210 requires them to be used. Vehicle Code section 15210 provides in part: "Notwithstanding any other provision of this code, as used in this chapter, the following terms have the following meanings: [¶] (a) 'Commercial driver's license' means a driver's license issued by a state or other jurisdiction, in accordance with the standards contained in Part 383 of Title 49 of the Code of Federal Regulations, which authorizes the licenseholder to operate a class or type of commercial motor vehicle."

Also, subdivision (p) of Vehicle Code section 15210 lists seven " '[s]erious traffic violation[s]' " and ends with the sentence: "In the absence of a federal definition, existing definitions under this code shall apply."

Based on the reference to the Code of Federal Regulations and the reference to federal definitions, plaintiff reaches the conclusion that the term "motor vehicle" in the Vehicle Code sections applied to him must carry the meaning found in title 18 of the United States Code. Specifically, section 31(a)(6) of title 18 of the United States Code defines "motor vehicle" as "every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property or cargo." The phrase "used for commercial purposes" is defined as "the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit." (18 U.S.C. § 31(a)(10).)

We disagree with plaintiff's interpretation of Vehicle Code section 15210 and his conclusion that use of the term "motor vehicle" throughout the Vehicle Code must carry the meaning set forth in the federal statute.

First, the introductory language in Vehicle Code section 15210 states that, "as used in this chapter, the following terms have the following meanings . . . ." The phrase "as used in this chapter" limits the use of the definitions, such as "commercial driver's license," to the chapter that contains section 15210—namely, chapter 7 (Commercial Motor Vehicle Safety Program) of division 6 (Drivers' Licenses) of the Vehicle Code. Chapter 7 contains seven articles, which begin at Vehicle Code section 15200 and end with Vehicle Code section 15325. The express limitation "as used in this chapter" means that the federal definitions incorporated by Vehicle Code section 15210 do not apply to the driver's license requirements contained in other chapters, such as the license requirement set forth in Vehicle Code sections 12500, subdivision (a) and 14601.1, subdivision (a).

Second, plaintiff's interpretation of the Vehicle Code is contrary to the legislative intent expressed in Vehicle Code section 15200, which states in full: "It is the intent of the Legislature, in enacting this chapter, to adopt those standards required of drivers by the Federal Motor Carrier Safety Administration of the United States Department of Transportation, as set forth in the federal Motor Carrier Safety Improvement Act of 1999 (Public Law 106-159) and to reduce or prevent *commercial* motor vehicle accidents, fatalities, and injuries by permitting drivers to hold only one license, disqualifying drivers for certain criminal offenses and serious traffic violations, and strengthening licensing and testing standards. This act is a remedial law and shall be liberally construed to promote the public health, safety and welfare. *To the extent that this chapter conflicts with general driver licensing provisions, this chapter shall prevail. Where this chapter is silent, the general driver licensing provisions shall apply.* It is the further intent of the Legislature that this

program be fee supported, and that the department fully recoup its costs within four years of the program's enactment." (Italics added.)

██ The Legislature explicitly stated that the general driver licensing provisions shall apply where chapter 7 of division 6 of the Vehicle Code was silent. Because chapter 7 is silent regarding the licensing requirements that apply in a *noncommercial* context, the federal definitions incorporated into chapter 7 do not override the California licensing requirements set forth elsewhere in the Vehicle Code. Therefore, the term "motor vehicle" as it appears in Vehicle Code section 12500, subdivision (a) is not defined by federal statute; instead, it is defined by Vehicle Code section 415.[16] That definition of "motor vehicle" is not limited to vehicles used for commercial purposes.

In summary, the fact that plaintiff did not use his truck to transport people or property for hire does not exempt him from California's general licensing requirements.

### E. *Conclusion*

Based on the facts specifically alleged in plaintiff's pleadings and the information available in the exhibits and documents subject to judicial notice, we conclude that plaintiff's arrest and the impoundment of his truck was done in accordance with California law and did not violate his constitutionally protected rights. Specifically, the towing and impounding of the truck was authorized by Vehicle Code section 22651, subdivision (h)(1). Furthermore, pursuant to Vehicle Code section 22651, subdivision (i)(4)(A),[17] Towing Company could not return the truck to plaintiff until plaintiff presented it with the Department's release. When plaintiff presented the Department's release on January 6, 2011, Towing Company returned the truck to plaintiff.

As a result, plaintiff cannot establish that Towing Company is liable for conversion based on a wrongful exercise of dominion over the truck. Therefore, we conclude that plaintiff's pleadings failed to allege facts sufficient to state a cause of action under any legal theory. Furthermore, the matters set forth in plaintiff's proposed second amended complaint fail to demonstrate that he could amend his pleadings to allege a valid cause of action. Accordingly, the trial court properly sustained the demurrer.

---

[16] A "motor vehicle" is a vehicle that is self-propelled, but excludes self-propelled wheelchairs, motorized tricycles, or motorized quadricycles that are operated by a person with a physical disability. (Veh. Code, § 415, subds. (a) & (b).)

[17] This provision sets forth the things an owner must do to obtain the release of a vehicle. They include paying the cost of towing and storage and presenting evidence of payment of fees as provided in Vehicle Code section 9561. (Veh. Code, § 22651, subd. (i)(4)(A), (B).)

## DISPOSITION

The order dismissing plaintiff's action is affirmed. Towing Company shall recover its costs on appeal.

Cornell, Acting P. J., and Gomes, J., concurred.