Filed 5/23/13  P. v. Jackson CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F064563 |
| v. | (Super. Ct. No. F11906383) |
| ROBBIE DELL JACKSON, | **O P I N I O N** |
| Defendant and Appellant. | |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Rosendo Peña, Judge.

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Amanda D. Cary and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P.J., Cornell, J., and Kane, J.

A jury convicted appellant, Robbie Dell Jackson, of elder adult abuse (Pen. Code, § 368, subd. (b)(1))[1] (count 1) and attempting to dissuade a victim (§ 136.1, subd. (a)(2)) (count 2). The jury found that Jackson used a deadly weapon within the meaning of section 12022, subdivision (b)(1) in committing count 1.

Jackson admitted having two prior strike convictions. (§§ 667, subd. (b)-(i), 1170.12, subds. (a)-(d)). The trial court sentenced Jackson to an indeterminate term of 25 years to life on count 1 (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) plus a consecutive determinate one-year term for the weapon enhancement (§ 12022, subd. (b)(1)). On count 2, the trial court struck Jackson's prior strike convictions and imposed a consecutive two-year determinate term. In addition, Jackson was ordered to pay $10,000 in restitution (§§ 1202.4, subd. (b)).

Jackson appeals, contending (1) the trial court lessened the prosecution's burden of proof and violated his Sixth and Fourteenth Amendment rights by instructing the jury on CALCRIM 372 (flight and consciousness of guilt); (2) the prosecutor committed misconduct in his closing argument; (3) the trial court erred in imposing restitution; and (4) defense counsel was ineffective for not objecting to the prosecutor's misconduct and the amount of restitution. We affirm.

## FACTS

On September 5, 2011, 85-year-old Thomas Benton was living with Jackson's uncle, Ronnie. In the early afternoon, Jackson went to Ronnie's house to collect money he believed Ronnie owed him. Ronnie's house has an enclosed front porch with a wrought iron security door. Jackson knocked on the security door. Benton went out onto the porch and Jackson, ranting and raving, yelled for Benton to let him in. Jackson asked if Ronnie was there and Benton told him that he was not. Jackson did not believe him so

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

Benton opened the security gate to let him in. Jackson also claimed that Benton owed him money. Suddenly, Jackson pulled a bat from behind his back and hit Benton with it in the left arm, causing blood to shoot out. Benton backed up and looked around the porch. When Jackson noticed he was looking around, he said, "You find something and pick it up, I'll kill you." Then Jackson said to Benton, "If you call the police, I'll be back to get you." Jackson then left, and walked down the street with the bat. Benton went inside the house to call the police and stop the bleeding.

Officer Robert Lincoln responded to Benton's call. While Officer Lincoln was taking Benton's statement, the house phone rang. Benton answered the phone and heard Jackson say, "I didn't believe you would call the police on me," "I'm gonna get you," and "I'm gonna do some great harm to you." Benton passed the phone to Officer Lincoln who heard, "If you have me arrested, I'll kill you nigger." Officer Lincoln identified himself and Jackson hung up.

Jackson testified he called Benton several times before going to Ronnie's house on September 5, 2011. When he got there, Benton "acted kind of crazy" and they argued. Then Benton swung a bat at him, hitting him in the hand. Jackson took the bat away from Benton and left the house with it. Jackson denied verbally threatening Benton and was not aware Benton was injured. Jackson also denied calling and threatening Benton after the incident.

## ARGUMENTS

### I.   The Trial Court Properly Instructed the Jury on Flight.

Jackson contends the flight instruction given by the trial court (CALCRIM No. 372) impermissibly lowered the prosecution's burden of proof. He also contends there was insufficient evidence to support giving the flight instruction because he did not run or flee from the scene.

3

Over Jackson's objection, the trial court instructed the jury with CALCRIM No. 372 as follows:

> "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

"In general, a flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' [Citations.] '"[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested."' [Citations.]" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)

"To obtain the instruction, the prosecution need not prove the defendant in fact fled, … only that a jury could find the defendant fled and permissibly infer a consciousness of guilt from the evidence. [Citation.]" (*People v. Bonilla* (2007) 41 Cal.4th 313, 328, italics omitted.)

"On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt." (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.)

Here, the record supported the inferences for the flight instruction. According to Benton, Jackson struck him with the bat and then warned him that he would return to "get [him]" if he called the police. Jackson then left with the bat, walked away from the scene, and discarded the bat.

4

On this record, the jury could reasonably infer that Jackson's immediate departure after striking Benton, his warning against calling the police, and his disposal of the bat, reflected consciousness of guilt.

In any event, any possible error was manifestly harmless. "The instruction did not assume that flight was established, but instead permitted the jury to make that factual determination and to decide what weight to accord it." (*People v. Carter* (2005) 36 Cal.4th 1114, 1182-1183.) Further, the trial court clarified the applicability of the instruction by telling the jury:

> "Some of these instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Finally, there was overwhelming evidence of Jackson's guilt. Jackson struck Benton in the arm causing injury and Officer Lincoln heard Jackson threaten to kill Benton if he had him arrested.

## II. The Trial Prosecutor did not Commit Misconduct.

Jackson contends the prosecutor committed misconduct by waiving his initial closing argument and defense counsel was ineffective for not objecting.

After the trial court instructed the jury, the prosecutor waived the initial closing argument. Defense counsel addressed the jury and argued it was a "he-said he-said case." She argued that Benton was not believable and that the evidence supported mutual combat, resulting in injury. On rebuttal, the prosecutor argued that Jackson lied on the stand and that the evidence supported a conviction on both counts.

The standards regarding prosecutorial misconduct are well established:

> """A prosecutor's … intemperate behavior violates the federal Constitution when it comprises a pattern of misconduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of

5

due process."'" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'" [Citation.]' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 960.)

Further, in order to establish a claim of ineffective assistance of counsel, appellant must demonstrate both that counsel's performance fell below an objective standard of reasonableness (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688) and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id*. at p. 694.) We need not determine whether counsel's performance was deficient if appellant fails to show prejudice. (*Id*. at p. 697.)

We conclude the trial prosecutor did not commit misconduct and that defense counsel was not ineffective for the reasons we now explain.

The prosecutor has the right to open the closing argument and to close it by rebuttal argument. (§ 1093, subd. (e).)[2] Further, the prosecutor has the right to waive the initial closing argument while maintaining the right to give a rebuttal argument. (*People v. Martin* (1919) 44 Cal.App. 45, 47.)

Jackson contends that the prosecutor "sandbagged" the defense by waiving the initial closing argument and then representing Benton as the only one telling the truth. "This left defense counsel with no opportunity to rebut the prosecutor's argument with ample examples of Benton's mendacity and exaggeration present on this record."

The record does not support Jackson's contention. Defense counsel raised the issue of credibility in her closing argument. In doing so, she attempted to bolster Jackson's defense by attacking Benton's credibility. She did so by arguing every point

---

**2** Section 1093, subdivision (e) provides in relevant part: "When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney … and counsel for the defendant, may argue the case to the court and jury; the district attorney … opening the argument and having the right to close."

that Jackson now claims she was prevented from arguing in response to the prosecutor's rebuttal argument. Thus, Jackson's prosecutorial misconduct argument must fail.

Jackson's ineffective assistance of counsel argument must fail for the same reason. Since defense counsel argued the points that Jackson contends she was precluded from arguing, then Jackson did not suffer prejudice and defense counsel was not ineffective assistance for not objecting to the prosecutor's waiver of his initial closing argument.

## III. The Trial Court did not Abuse its Discretion in Imposing a Restitution Fine of $10,000.

Jackson contends the trial court erred in imposing a $10,000 restitution fine without considering his ability to pay and that defense counsel was ineffective for not objecting to it. Therefore, he argues, the restitution fine must be reduced to $200.

Former section 1202.4, subdivision (b) provided, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." At the time of Jackson's crime against Benton (September 5, 2011), in the case of a felony conviction, the minimum fine was $200, while the maximum fine was $10,000.[3]

---

[3] Section 1202.4, subdivision (b)(1) was amended effective January 1, 2012, to provide: "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000), if the person is convicted of a felony, and shall not be less than one hundred twenty dollars ($120) starting on January 1, 2012, one hundred forty dollars ($140) starting on January 1, 2013, and one hundred fifty dollars ($150) starting on January 1, 2014, and not more than one thousand dollars ($1,000) if the person is convicted of a misdemeanor." (Stats. 2011, ch. 358, § 1, p. 3759.)

"The amount between $200 and $10,000 is set in the court's discretion, 'commensurate with the seriousness of the' crime of which the accused has been convicted. (§ 1020.4, subd. (b)(1).) A defendant's inability to pay is not a compelling and extraordinary reason to excuse imposition of a section 1202.4, subdivision (b)(1) restitution fine. (§ 1202.4, subd. (c).) However, a defendant's ability to pay is considered, among other factors, in setting the amount of the fine above $200. (§ 1202.4, subds. (c)-(d).)" (*People v. Kramis* (2012) 209 Cal.App.4th 346, 350 (*Kramis*).)

At the time Jackson committed the present offenses, section 1202.4, subdivision (d) stated:

> (d) "In setting the amount of the fine pursuant to subdivision (b) in excess of the two hundred-dollar ($200) or one hundred-dollar ($100) minimum, the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime.… A defendant shall bear the burden of demonstrating his or her inability to pay. Express findings by the court as to the factors bearing on the amount of the fine shall not be required. A separate hearing for the fine shall not be required." (§ 1202.4, subd. (d).)

We will not overturn a decision of the trial court in setting the amount of the restitution fine absent a showing of an abuse of discretion. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1321.)

Jackson contends the restitution fine is unauthorized because the trial court did not consider his ability to pay or other factors that weighed in favor of a lower fine. Additionally, he contends the trial court violated his due process right by determining the fine without a jury trial.

We reject Jackson's contention he was entitled to a jury trial on the restitution fine. Where, as here, the trial court exercised its discretion to impose a restitution fine within a statutory range, a jury verdict is not required. (*Kramis*, *supra*, 209 Cal.App.4th

8

at pp. 351-352.)  Therefore, the trial court's imposition of the maximum fine of $10,000 under section 1202.4 did not violate Jackson's right to a jury trial.

Additionally, Jackson forfeited his claim that the maximum restitution fine was unauthorized by failing to object at the sentencing hearing.  (*People v. Nelson* (2011) 51 Cal.4th 198, 227.)  Nevertheless, it fails on the merits.

First, Jackson's contention the court did not consider his ability to pay is baseless. The statute requires the court to consider it and we presume that it did.  Further, Jackson "points to no evidence in the record supporting his inability to pay, beyond the bare fact of his impending incarceration.  Nor does he identify anything in the record indicating the trial court breached its duty to consider his ability to pay; as the trial court was not obligated to make express findings concerning his ability to pay, the absence of any findings does not demonstrate it failed to consider this factor."  (*People v. Gamache* (2010) 48 Cal.4th 347, 409.)

Second, Jackson contends there are other factors the court is required to consider that militate against the maximum fine in his case such as a single crime victim and no economic loss or gain from the crime.  Jackson ignores, however, additional factors such as the seriousness and gravity of the offense and the circumstances of its commission that support imposition of the maximum fine.

We conclude on this record the trial court did not abuse its discretion in imposing the maximum restitution fine.  Thus, we further conclude Jackson was not prejudiced by defense counsel's failure to object to it.

We find no error.

## DISPOSITION

The judgment is affirmed.

9