Filed 2/25/21  In re H.H. CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re H.H., a Person Coming Under the Juvenile Court Law. | |
| | D078221 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J520133) |
| Plaintiff and Respondent, | |
| v. | |
| RYAN H., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel, for Plaintiff and Respondent.

Ryan H. (Father) appeals from a juvenile court order terminating his reunification services as to his daughter H.H. at the 12-month review hearing

(Welf. & Inst. Code, § 366.21, subd. (f)).[1] Father contends the court erred in terminating his reunification services when it extended the mother's reunification services to 18 months (§§ 361.5, subd. (a)(3)(A), 366.21, subd. (g)(1)) and did not set a selection and implementation hearing (§ 366.26). Father concedes substantial evidence supports the court's finding of no substantial probability the child would be returned to his custody by the 18-month hearing date (§ 366.21, subd. (g)(1)) but maintains the court should have continued his services. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Father and H.H.'s mother (Mother)[2] have a significant history of illegal drug use. He is a long time heroin user with years of drug-related criminal offenses. Father's family members had tried "multiple times with no success" to convince him to enroll in a substance abuse treatment facility. At the time of H.H.'s birth, the parents were homeless.

In late August 2019, H.H. was born prematurely, with a birth defect, and addicted to methamphetamines and opiates from Mother's drug use. Father was observed to be under the influence of drugs at the hospital, and he failed to show for a drug test. A few days later, he was arrested for being under the influence of a controlled substance and possession of drug paraphernalia. H.H. was treated at the hospital for her birth defect and drug withdrawal symptoms.

The San Diego County Health and Human Services Agency (Agency) filed a petition on behalf of H.H., alleging the parents were unable to

---

[1]    Further unspecified statutory references are to the Welfare and Institutions Code.

[2]    Mother is not a party to this appeal. Our discussion of her is accordingly limited.

2

adequately care for the child due to their substance abuse. (§ 300, subd. (b).) H.H. was detained out of the parents' care. Subsequently, the court made a true finding on the petition and removed H.H. from parental custody.

In November 2019, Father was arrested and incarcerated for a hit-and-run accident (Veh. Code, § 20002, subd. (a)) and evading a pursuing peace officer (Veh. Code, § 2800.2, subd. (a)). He pleaded guilty and was sentenced in January 2020 by a criminal court to complete a six-month residential drug treatment program.

In juvenile court, reunification services were ordered for the parents, including liberal supervised visits. The court specifically advised the parents that they must make substantive progress on their case plans by the six- and 12-month review hearings or else they may lose their services as well as parental rights.

Father's case plan included a 12-step substance abuse program, consistently negative drug tests, parenting education, and compliance with all conditions of probation. The social worker reviewed these requirements with Father.

In March 2020, Father walked out of his court-ordered residential drug treatment program, which violated probation. He was arrested and tested positive for methamphetamine. In April, Father was released from custody and for several months thereafter, failed to contact his probation officer.

In August, Father told the assigned social worker that he had been trying to get in a rehabilitation program for months without success. Father was not in a relationship with Mother. The social worker made new referrals for services and asked Father to drug test the next day. However, the next day, Father was a no show for the drug test, claiming to be "at the hospital

3

with a high fever." A week later, Father appeared for a drug test and results at that time were negative.

In late August, Father entered a 90-day inpatient drug treatment program. His drug test on entry in the program was positive for amphetamines and opiates. He was reportedly compliant with the program's requirements for the next two months. Father also began a parenting class. He was unemployed and lacked stable housing.

Father did not visit H.H. in 2019 and only sporadically visited in 2020. He engaged in a few video calls with H.H. during the summer, and then stopped. During one of these video calls, the foster parents reported that Father "did not look good" and he looked "sick." While in residential drug treatment, Father had weekly supervised visits with H.H.

For various reasons, including because of the COVID-19 pandemic, the contested six- and 12-month review hearings were combined and held in November 2020 (trial). In the Agency's assessment, there was no substantial probability H.H. would be returned to Father's custody by the next hearing date (March 2021), and thus, it recommended termination of his reunification services. In the past year, Father had multiple positive drug tests or no shows; failed to complete drug treatment and parenting education; did not consistently visit H.H. or maintain contact with the Agency; and had no stable housing. In contrast, the Agency assessed a substantial probability H.H. would be returned to Mother's care. Unlike Father, she completed her drug treatment program, parenting education, and therapy. She maintained good contact with the Agency and foster parents. Mother also consistently visited H.H., progressed to unsupervised visits, obtained housing, and was about to begin overnight visits.

4

At trial, Father's counsel requested an extension of services for Father to the 18-month hearing date. Counsel argued the court was authorized to continue services "*if* it finds that there is a substantial probability the child will be returned to the physical custody of the parent" (italics added) and that to make the substantial probability finding, the court "must find" each factor under section 366.21, subdivision (g)(1). Counsel proceeded to argue that Father met each of the three factors. Finally, counsel claimed it was in H.H.'s "best interest" to continue Father's services for various reasons, including that there would be no delay in permanency and Father could eventually help Mother in caring for H.H.

After considering the evidence and parties' arguments, the court terminated Father's reunification services, finding no substantial probability H.H. would be returned to his custody by the 18-month hearing date because he had not (1) visited consistently with the child and (2) demonstrated he could provide for the child's needs. The court commented that Father's "addiction has interfered with both of those [factors]." Mother's services were continued based on the substantial probability H.H. would be returned to her care by the 18-month hearing date, or by March 4, 2021.

Father's appeal followed.

DISCUSSION

When a dependent child is removed from parental custody, the court ordinarily orders services for the family to facilitate its reunification. (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 876 (*Katelynn Y.*).) Reunification services for the parent of a child under three years of age are presumptively limited to six months and may be extended to 12 months. (§ 361.5(a)(1)(B); *In re Jesse W.* (2007) 157 Cal.App.4th 49, 59.) The court may further extend the parent's reunification services to 18 months "only" if the court finds there

5

is a substantial probability the parent will regain physical custody within the extended time period.  (§§ 361.5, subd. (a)(3)(A), 366.21, subd. (g)(1); *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 845 (*Tonya M.*); *In re Jesse W., supra*, at p. 59.)  For the court to make the substantial probability finding, the parent must have (1) had consistent, regular contacts and visits with the child; (2) made significant progress in resolving the problems prompting the child's removal; and (3) demonstrated the capacity and ability to complete his or her case plan and provide for the child's safety, protection, physical and emotional well-being, and special needs.  (§ 366.21, subd. (g)(1)(A)-(C).)

"In deciding whether to extend or terminate reunification services, the court does not consider the parents as one unit, but instead treats each of them on his or her own merits.  'Indeed, at each review hearing, the court must evaluate the efforts or progress toward reunification made by each parent individually by considering "the extent to which he or she availed himself or herself to services provided." [Citations.]  Although the purpose of services is to facilitate a child's return to parental custody, reunification often involves one, but not both, parents.  [¶] … Because reunification services are a benefit, not a constitutional entitlement, the juvenile court has discretion to terminate those services at any time, depending on the circumstances presented.  [Citation.]  In deciding whether to terminate the services of one parent who has failed to participate or make progress toward reunification, the court is not constrained by a consideration of the other parent's participation in services.' " (*Katelynn Y., supra,* 209 Cal.App.4th at p. 877, italics omitted.)

"Where, as here, the court continues one parent's services and does not set a section 366.26 hearing, it retains discretion to terminate the other (nonreunifying) parent's services.  [Citations.]  The parent seeking additional

6

services has the burden of showing such an order would serve the child's best interests. [Citations.] In exercising its discretion, the court has 'the ability to evaluate whether the parent will utilize additional services and whether those services would ultimately inure to the benefit of the minor.' [Citation.] We will not disturb the court's determination unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881; see also *In re Alanna A.* (2005) 135 Cal.App.4th 555, 565-566 (*Alanna A.*) [continuing one parent's reunification services past the 12-month review hearing and terminating nonreunifying parent's services].)

On appeal, Father contends the juvenile court was not required to find all three factors that underlie a substantial probability finding, identified in section 366.21, subdivision (g)(1), to continue his reunification services. In other words, Father argues the court mistakenly believed it had no discretion to continue his services when in fact, according to Father on appeal, the court could extend services based on the child's best interests because it was extending Mother's services to the 18-month date. However, to the extent the juvenile court was mistaken, Father clearly invited this error at trial and is estopped from arguing otherwise on appeal. " 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' " (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1193.) At trial, Father's counsel argued that the court "must find" all three factors to continue his reunification services. Father may not argue otherwise now. (*Id.* at p. 1196.)

Even if Father did not invite the error, we are satisfied, after reviewing the record, that the court made the appropriate considerations in terminating

7

his services. As one rationale for terminating services, the court certainly stated that Father did not meet "the legal standard that would allow the court to extend services at this point," i.e., there was no substantial probability H.H. would be returned to Father's physical custody by the 18-month hearing date.[3] (§ 366.21, subd. (g)(1)(A)-(C).) This was undisputedly a highly relevant consideration.[4] In addition, Father's counsel asserted at trial that continuing Father's services would be in H.H.'s best interest, in light of Mother's likely reunification with the child. Trial counsel argued, for example, that Father could help Mother care for H.H. We presume the court considered these "best interest" arguments and impliedly found it was not in H.H.'s best interest to continue reunification efforts with Father.[5] (*In re*

---

[3]    Father does not dispute, and thus effectively concedes, substantial evidence supports the court's finding that he (1) did not consistently and regularly visit the child and (2) did not demonstrate the capacity and ability both to complete the objectives of his treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs. (§ 366.21, subd. (g)(1)(A), (C).)

[4]    Although *Tonya M.* did not involve a situation where one parent's services were continued and the other parent's services were terminated at the 12-month hearing, our Supreme Court discussed that, "from the 12-month review hearing to the 18-month review hearing . . . services are available *only if the juvenile court finds specifically* that the parent has 'consistently and regularly contacted and visited with the child,' made 'significant progress' on the problems that led to removal, and 'demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs.' " (*Tonya M., supra*, 42 Cal.4th at p. 845, italics added.)

[5]    We note that Father could have, but did not, ask for a specific best interest finding. If he had, the juvenile court could have easily made an express finding that continued services for Father were not in H.H.'s best interest. For this reason, Father has also forfeited any argument that the court failed to make a specific finding. (*In re E.A.* (2012) 209 Cal.App.4th

*G.P., supra*, 227 Cal.App.4th at p. 1196 [implied finding of detriment]; see also *In re Corienna G.* (1989) 213 Cal.App.3d 73, 83-84 [implied finding is proper where substantial evidence would have supported an express finding].)

The juvenile court's decision to terminate Father's reunification services was reasonable. He was evaluated on his individual merits. Father had been addicted to drugs for many years. H.H. was a baby. After the petition was filed, Father was twice arrested, and he continued to use drugs, testing positive or failing to drug test multiple times. For over five months, between March and late August 2020, he was not in any kind of drug treatment even though it was a court-ordered condition of his probation. He was not forthcoming with his probation officer or social worker. Father did not visit H.H. in 2019 and most of 2020, he was unemployed and without housing at the time of trial, and he had no plan to provide for the child's needs by March 2021. Conversely, Mother had progressed in her case plan absent Father's influence and was prepared to care for H.H. on her own. Despite Father's last two months of sobriety, the court reasonably discontinued his reunification services. (*Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881; *Alanna A., supra*, 135 Cal.App.4th at p. 566 [court rationally concluded that father's performance did not merit continued reunification services based on no substantial probability of reunification].)

For the foregoing reasons, we cannot conclude the court's decision to terminate Father's reunification services exceeded the limits of its discretion by being arbitrary, capricious, or patently absurd. (*Katelynn Y.*, *supra*, 209 Cal.App.4th at p. 881.)

---

787, 791 [forfeiture of "defect that could have been easily cured, if raised in a timely fashion"].)

DISPOSITION

The order terminating Father's reunification services is affirmed.


O'ROURKE, J.

WE CONCUR:



BENKE, Acting P. J.



GUERRERO, J.